# SUPREME JUDICIAL COURT

#### FOR THE

## COUNTIES OF SUFFOLK AND NANTUCKET,
## MARCH TERM 1841, AT BOSTON.

PRESENT:

Hon. LEMUEL SHAW, Chief Justice.
Hon. SAMUEL PUTNAM,
Hon. SAMUEL S. WILDE,   } Justices.
Hon. CHARLES A. DEWEY,

## FITZHENRY HOMER vs. PHILO S. SHELTON, Execucoi.

A testator, whose heirs at law were one son and two married daughters, in the first clause in his will, devised and bequeathed to his son, "subject to the limitations," afterwards made in the will, one equal third part of all his estate, viz. certain real estate particularly described, and so much of his other property not specifically devised, as, with advancements to the son, should amount to such third part; but if the son, at his decease, should leave only one child, then the child to take but one third part of its father's share.

The testator, in a subsequent clause, devised and bequeathed the "general residuum" of his estate "not before specifically devised," equally to be divided among his three children, and their heirs and assigns, as follows : "The share of my said son to be held by him to his own use and benefit forever, and the shares of my said two daughters to be held in trust, for the use and benefit of my said daughters and their heirs and assigns, in like manner as is provided in respect to the portions herein before specifically devised and bequeathed to them respectively."

The last clause in the will was thus : "In case my said son and daughters shall die leaving only one child living at their deaths respectively, and no issue then living of any other child, such only child shall take one undivided third part, and no more, of the whole property which would have fallen to the share of said child's parent in my estate by this will, and the other two third parts of such parent's share shall enure to and be divided among my other children and their legal representatives."

Held, that the son was not entitled absolutely to the personal property included in the general residuum, but only to the use and possession thereof.

Held also, that the son was not bound, before taking said property into possession, to give security that the same should be forthcoming, at his decease, upon the happening of

Homer *v.* Shelton, Executor.

the contingency upon which it was limited over by the will. Security is required, in such case, only when it is shown to the court that there is danger that the property will be wasted, secreted or removed by the first taker : When this is shown, the court may require security at any time during the first taker's term of possession.

ASSUMPSIT to recover the plaintiff's share of the personal property of which his father, Benjamin P. Homer, died possessed.

The plaintiff and defendant were appointed executors of the will of said Benjamin P. Homer, which was duly proved and allowed by the probate court. They accepted the trust and returned an inventory, showing that the real estate of the testator amounted to $273,000, and the personal property to $175,348. They also settled an account, in the probate court, of their administration of said estate, and the plaintiff afterwards resigned his trust as executor, and was discharged.

This action was brought in order to obtain an early decision as to the true construction of said will ; and it was agreed by the parties that such judgment should be rendered, as the court should deem proper, in reference to the interest of the plaintiff, under said will.

The following are the clauses in the will, on which the questions in this case were raised :

1. " I give, devise, and bequeath to my son Fitzhenry Homer and his heirs and assigns, *subject to the limitations hereinafter made,** one equal third part of all my estate ; and in part of and towards his share, I give and devise to him and his heirs and assigns, to his and their own use for ever, my store and land under and adjoining the same, in Boston aforesaid, known by the name of store No. 33–34, North Market Street; also my stores called No. 10, and No. 35, on Central Wharf, in said Boston, together with two shares, so called, in said Central Wharf, that is to say, one share to each of the two stores respectively, and also the dwellinghouse in said Boston, called the No. 5 Pearl Place, with the land under and adjoining the same, and also eighteen shares, so called, in India Wharf in Boston aforesaid ; the said several stores and land, and shares in wharves,

* The words in italic were interlined

to be taken by my son Fitzhenry, towards his said part of my estate, at the valuation which shall be made thereof by the persons hereinafter appointed to value the several portions of my estate, as hereinafter provided. And in order to make up to my said son Fitzhenry his said equal third part of my estate, I do give, bequeath and devise to him and his heirs and assigns, so much of my other property not specifically devised, as with all sums given to him by way of advancement shall amount to such third part of my estate ; but if my said son shall leave but one child living at the time of his decease, then it is my will that such one child should take but one third part of its father's share of my estate, as is hereinafter particularly provided."

In the second clause of the will, the testator devised to his son, (the plaintiff) and to N. P. Russell, in trust for his daughter, Mary Dixon, wife of Thomas Dixon, one third part of his estate — describing certain real estate, and providing that an equal third part should be made up from other property not specifically devised ; and directed that said trustees should hold said estate for the sole and separate use of said daughter, and pay to her the rents, income, &c., during her life, and at her decease, transfer and pay over said estate to the child or children of said daughter, living at her decease ; and if said daughter should leave only one child, then to that child *in part, and in part to the testator's other grandchildren, in proportion as in the will afterwards provided.* [This provision, in italics, was interlined in the will.] And if said daughter should die, leaving no children at her decease, then said trustees to transfer and pay over said daughter's share to all and every of the testator's other children then living, and the representatives of any deceased child or children of the testator, equally to be divided.

In the third clause of the will, the testator devised to the same trustees one third part of his estate, describing a part thereof, and directing that an equal third part should be made up from property not specifically devised— for the use of his other daughter, Georgiana A. Shelton, wife of Philo S. Shelton, (the defendant) in the same terms, and with the same restrictions, limitations, devise over, &c. as in the second clause.

4. " And as to the general residuum of my estate, not herein specifically devised or bequeathed, whatsoever the same may be, and wheresoever situate, and whether now belonging and coming to me, or hereafter to be acquired, I give, devise and bequeath the same, as before provided, equally to be divided among my said children and their heirs and assigns ; the share of my said son to be held by him to his own use and benefit for ever, and the shares of my said two daughters to be held in trust for the use and benefit of my said daughters and their heirs and assigns, in like manner as is provided in respect to the portions hereinbefore specifically devised and bequeathed to them respectively. And in case it shall so happen that any one or more of my children shall depart this life during my life, and leaving no lineal descendants, so that such deceased child's share would by law become lapsed, then it is my will that the share of any child or children, so dying, shall go to and be divided equally, share and share alike, among the surviving brothers and sisters of such deceased child or children, or their legal representatives by right of representation."

5. " And whereas I have hereinbefore made no express provision for the case of my son and two daughters leaving respectively but one child living at their decease : Now it is my will, that in case my said son and daughters shall die leaving only one child living at their deaths respectively, and no issue then living of any other child, then it is my will that such only child shall take one undivided third part, and no more, of the whole property which would have fallen to the share of the said child's parent in my estate, by this my will ; and I do give and bequeath the said third part accordingly. And the other two third parts of such parent's share shall enure to and be divided among my other children and their legal representatives, share and share alike, in like manner, to all intents and purposes, as they take and hold their own original shares of my estate under this my will ; and I give the same accordingly."

This last clause was written in a smaller hand than the rest of the will, in a narrow space, (that seemed to have been left blank, when the rest of the will was penned,) between the pre-

ceding clause and the clause in which the testator appointed his executors. The plaintiff's counsel suggested, and the appearance of the will rendered it probable, that this last clause, and the interlineations in the former parts of the will, were written at one time, and not with the same pen which was used in writing the other parts of the instrument. The interlineations were mentioned at the bottom of the will, as having been made before execution and attestation.

The plaintiff, and the two daughters mentioned in the will, are the testator's only heirs at law, and when the will was executed, the plaintiff had only one child.

The case was argued at March term, 1840.

*Dexter & C. G. Loring*, for the plaintiff.

*Choate & E. Blake*, for the defendant.

The opinion of the majority of the court was delivered by WILDE, J. This is an action of assumpsit, brought to recover the plaintiff's share of the personal property bequeathed to him by the last will and testament of his deceased father, Benjamin P. Homer. His claim is founded on two grounds, both of which depend on the construction to be given to the will.

In the first place, his counsel contend, that by the will an absolute property in his share of the estate was bequeathed to the plaintiff, and that the limitation over is void for repugnancy or uncertainty. And secondly, if the limitation over be valid, still it is contended that the plaintiff, as the first taker, is entitled to recover, and to hold the property subject to the limitation.

" The first and great rule in the exposition of wills, to which all other rules must bend, is," as Chief Justice Marshall lays it down, " that the intention of the testator shall prevail, provided it be consistent with the rules of law." " It is the polar star to guide us in the construction of wills." *Smith* v. *Bell*, 6 Pet. 75. 84. The legal import, therefore, of technical language, or words of limitation, is not to prevail against the manifest intention of the testator, appearing from other parts of the will. Such language is to be construed, if it may be, so as to effectuate that intention. If an estate be given to A. and his heirs, and if he dies without children or issue living at his death, then to B. and

his heirs, the limitation over is valid ; not, however, as a contingent remainder ; for by law no remainder over, after the gift of a fee, can be valid : But the limitation is good as an executory devise, so that the intention of the testator may not be defeated. This " the law admits," says Fearne, " in the case of a will, though contrary to the rules of limitation in conveyances at common law. It is only an indulgence allowed to a man's last will and testament, where otherwise the words of the will would be void." Fearne, (7th ed.) 386. The same liberal rule of construction, to effectuate the intention of a testator, is laid down by Buller, J. in the case of *Hodgson* v. *Ambrose*, 1 Doug. 342. " If the intention be apparent," he remarks, " I know of no case that says a strict legal construction, or a technical sense of any words whatever, shall prevail against it."

This then being the indisputable rule of construction, (and it applies as well to executory bequests of personal chattels as to executory devises of real estate,) the question is, how far it affects and controls the present case.

By the first clause in the will, the testator gives, devises, and bequeaths to his son, (the plaintiff,) and his heirs and assigns, (subject to the limitations in said will afterwards made) one equal third part of all his estate ; and in part, and towards his share, he devises to him, his heirs and assigns, certain stores and real estates ; and in order to make up his said equal third part, he gives, bequeaths and devises to him, and his heirs and assigns, so much of his other property, not specifically devised, as with all sums given to him by way of advancement should amount to such third part of his estate. Then follows the limitation in the words following : " But if my said son shall leave but one child living at the time of his decease, then it is my will that such one child should take but one third part of its father's share of my estate, as is hereinafter particularly provided."

In the last clause in the will, this limitation is extended to the gifts to his other children, as follows : " And whereas I have hereinbefore made no express provision for the case of my son and two daughters leaving respectively but one child living at

their decease ; now it is my will, 'that in case my said son and daughters shall die leaving only one child living at their deaths respectively, and no issue then living of any other child, then it is my will that such only child shall take one undivided third part, and no more, of the whole property which would have fallen to the share of the said child's parent in my estate, by this my will ; and I do give and bequeath the said third part accordingly. And the other two third parts of such parent's share shall enure to and be divided among my other children and their legal representatives, share and share alike, in like manner, to all intents and purposes, as they take and hold their own original shares of my estate under this my will ; and I give the same accordingly."

Taking into consideration these clauses of the will, there can be no doubt as to their construction. The intention of the testator is manifest, and it is not inconsistent with any rule of law So that unless a different construction is to be given to some other part of the will, it is very clear that the plaintiff took under the will a conditional fee in the real estate, with a limitation over, by way of executory devise, in favor of the testator's children and grandchildren, and their legal representatives ; and that his title to the personal estate is subject to the same conditional limitation. But the argument for the plaintiff is, that by the residuary clause in the will there is given to the plaintiff, by necessary implication, a right to alien and dispose of the property, and consequently that the limitation over is repugnant and void.

The leading case on this point is *The Attorney General* v. *Hall*, Fitzg. 314. In that case, William Hall, being seized and possessed of a considerable estate, real and personal, made his will in the words following : "I give and bequeath all my real and personal estate to my son Francis Hall, and to the heirs of his body, and to his and their use, to be paid unto him in three years after my death ; and during that time I make Sir Isaac Newton executor of this my will ; and after the said three years expired, I do appoint that my said son Francis shall be executor , and if my said son Francis Hall shall die, leaving no

heirs of his body living, then I give and bequeath so much of said real and personal estate, as my said son shall be possessed of at his death, to the Goldsmiths' Company of London, in trust " for charitable purposes mentioned in the will. " But my will is that the company shall not give my son any disturbance during his life."

It was adjudged that the limitation over to the Goldsmiths' Company was void, because the absolute ownership had been given to the son, and the company were to have no more than he should have left unspent ; and therefore he had a power to dispose of the whole ; which power was not expressly given to him, but it resulted from his interest. A similar principle is recognized in *Jackson* v. *Bull*, 10 Johns. 19. There the testator devised to his son Moses, and to his heirs and assigns forever, a certain lot he owned, and also bequeathed to him $500 ; and by another clause he directed, that in case his son Moses should die without lawful issue, the said property he should die possessed of should go to another of his sons. This limitation over also was held void, as being repugnant to the absolute ownership and disposal of the property given to Moses. The same principle was adopted in the case of *Ide* v. *Ide*, 5 Mass. 500, and in some other cases. It is not, however, easy to reconcile these decisions with that in *Smith* v. *Bell*, 6 Pet. 68. In that case, the words of the will were, " I give to my wife E. G. all my personal estate whatever &c. after payment of my debts, legacies, and funeral expenses, which personal estate I give and bequeath unto my said wife E. G. to and for her own use and disposal absolutely ; the remainder after her decease to be for the use of J. G. the son of the testator ; " and it was held that J. G. took a vested remainder in the personal estate, which came into possession after the death of E.G. the testator's wife. Chief Justice Marshall, in that case says, " that it would be difficult to support the proposition, that a personal thing, not consumed by the use, could not be limited in remainder after a general bequest to a person in being, with a power to use and even dispose of it ; provided the whole will showed a clear intention to limit the interest of the first taker to his life."

But it is by no means necessary for the decision of this case to attempt to reconcile these decisions ; for there is a material distinction between this case and the case of the *Attorney General* v. *Hall*, and the other cases cited by the plaintiff's counsel. The bequest to the plaintiff is not absolute, but is expressly limited on a certain contingency. There is no power given to him, in any part of the will, to dispose of or alienate the estate. On the contrary, the limitation extends to the plaintiff's whole share of the property devised and bequeathed to him, and not to such part thereof as he might leave undisposed of at his decease ; from which a power of disposal might be implied. With respect to the residuary clause, we think it contains nothing inconsistent with the other clauses in the will ; and if it does, there is no reason why it should prevail rather than the other clauses. If the residuary clause rendered the prior limitation null, it was revived by the subsequent clause. The rule is, that when two parts of a will are totally irreconcilable, the latter shall prevail, as that is presumed to be the most certain indication of the final intention of the testator. 6 Pet. 84. 2 Bl. Com. 381. And this presumption is strengthened by the interlineation subsequently made in the first clause. This rule, however, is not to be resorted to, except in cases where the repugnance is clear, so that one of the parts of the will must of necessity be rejected ; for they are to be reconciled, if they possibly may be by any reasonable construction. And we are of opinion that the residuary clause may clearly be reconciled with the other clauses in the will. The principal object of the residuary clause probably was, to dispose of any real estate which the testator might acquire after making his will ; for all the property, which he then had, had been disposed of by the previous clauses of the will. The residuary clause, however, in terms extends to all the property of the testator not specifically devised or bequeathed. But then it is given " as before provided, equally to be divided among all his children and their heirs and assigns." And this, we think, cannot reasonably be construed as indicating any intention to annul the previous limitation ; but that the devisees should hold their shares subject to the limitation as before provided. And this is

apparent from the concluding part of the clause, which directs that the devisees shall hold their shares, "in like manner as is provided in respect to the portions hereinbefore specifically devised and bequeathed to them respectively." We think this part of the residuary clause extends to the share of the son as well as to the shares of the daughters ; and therefore, instead of annulling the limitation, expressly confirms it ; for the property specifically devised is, by the first clause, expressly given subject to the limitation.

The construction contended for by the plaintiff's counsel, which limits the provision to the children of the testator's daughters, is opposed by several obvious and weighty objections.

In the first place, the whole clause, in its grammatical sense, does not require such a construction. Secondly. No good reason can be imagined why the provision should not be so construed as to apply to the plaintiff's child, as well as to the children of the testator's daughters. On the contrary, the presumption is strong, that the situation of the plaintiff's family, at the time the will was made (he having but one child) was the cause which induced the testator to regulate the distribution of his estate among his grandchildren after the death of their parents. Thirdly. When the construction of any part of the will is doubtful, it should be so construed as to conform to the other parts of the will, and not so as to cause a repugnancy, if it may be avoided by any reasonable construction. And we think the construction we have adopted is perfectly reasonable, and perfectly consistent with the other two clauses in the will in relation to the same matter. And lastly, the testator's intention is explained fully, and rendered certain, by the last clause. In that clause, he declares his intention in the language following : "And whereas I have hereinbefore made no express provision for the case of my son and two daughters leaving respectively but one child living at their decease : Now it is my will, that in case my said son and daughters shall die leaving only one child living at their deaths respectively, and no issue then living of any other child, then it is my will that such only child shall take one undivided third part, and no more, of the whole property which would have

fallen to the share of the said child's parent in my estate, by this
my will; and I do give and bequeath the said third part according-
ly." Now this clause in the will professes to explain, and to
clear away all doubts, if any should arise, as to the meaning of
the previous clauses in the will, and it is consistent with the lan-
guage of those two clauses. The testator's intention, therefore,
is apparent, and we know of no rule of law by which it can be
defeated.

It has been argued, that the residuary clause extends to the
disposition of the whole personal estate; but this is inconsistent
with the manifest intention of the testator to distribute his estate
in equal shares among his children. The real estate specifical
ly devised was not given in equal shares, and the shares were to be
made equal by other property which was not specifically devised.

It has also been argued, that the construction of the will
which we adopt would imply the testator's want of confidence in
his son, for which there was no foundation, and which, as it
evidently appears by the will itself, did not exist. If property
were never lost by wise and intelligent men, there might be some
foundation for such an implication. But when we consider how
fluctuating property is, and how easily it shifts hands, no great
weight can be attached to this argument. And besides, it by
no means appears that the apprehension of the loss of the prop-
erty by the son was the motive for the limitation over. The ty-
ing up of the property, as it is called, was the necessary conse-
quence of the testator's determination to regulate the distribution
of his estate among his grandchildren, after the death of his chil-
dren. As to the sums given to the plaintiff by way of advance-
ment, those clearly were given absolutely before the will was
made, and did not pass by that instrument; and consequently
are not subject to the limitation over. The construction of the
will in this respect is very clear. The words of the will are,
that the only child, in the contingency supposed, "shall take
one third part, and no more, of the whole property which would
have fallen to the share of the said child's parent in my estate
by this my will, and the other two third parts of such parent's
share hall enure to and be divided among my other children and

their legal representatives in like manner as they hold their own original shares of my estate under this my will." Thus the limitation over is expressly confined to the property which passed under the will.

We are next to consider whether the plaintiff is entitled to recover on the other ground on which he founds his claim ; and we are of opinion that he is.

It was manifestly the intention of the testator to give to the plaintiff the possession and management of his share of the property devised and bequeathed to him, notwithstanding the limitation over. The residuary clause expressly directs that his son's share should be held by him, for his own use and benefit, and that his daughters' shares should be held in trust for their use and benefit. It is plain that the testator never intended that his son's share should be held in trust by the defendant as one of the executors of his will. The plaintiff was the other executor, and he was also one of the trustees to whom were given the shares of the testator's two daughters. And the testator expressly directs and requests that no bond shall be given, by the trustees appointed under the will, to the judge of probate, for execution of their trusts, other than their own several bonds, without sureties. It is therefore manifest that the testator had full confidence in his son ; for he not only directed that he should hold his own share, but also that he and another trustee should hold the shares of the daughters without giving security, except their own bonds.

It has been argued for the defendant, that the plaintiff is not entitled to possession of his share, without giving security that the property shall be forthcoming, at his decease ; and that otherwise the contingent bequest may be defeated, unless the executor would be liable, who we think clearly would not be, in any event. Formerly the rule in chancery was to require security from the tenant for life of personal property, in favor of the person entitled to the remainder. But in *Foley* v. *Burnell*, 1 Bro. C. C. 279, Lord Thurlow says, that " the cases, as to tenant for life giving security for goods, have been overruled, and the court now demands only an inventory, which is more equal jus-

tice ; as there ought to be danger in order to require security." If there should hereafter appear good cause to apprehend that the property would be wasted, secreted, or removed by the plaintiff ; in such a case, a court of chancery might undoubtedly interfere. 2 Kent Com. (3d ed.) 354. *Langworthy* v. *Chadwick,* 13 Connect. 42.

This rule appears just and reasonable in respect to all bequests of goods and chattels for life with remainder over, where the tenant for life is entitled to the use of the goods and chattels. But as to gifts by will of stocks or money, with remainder over of the capital or the stocks, a different rule may apply. In such case the executor may be entitled to hold the property in trust until the death of the legatee for life, taking the interest or income only to his own use, unless some different provision should be contained in the will.

But this rule is not applicable to the present case. The plaintiff is not a tenant for life. He has an estate in fee simple in the real estate devised to him, and an absolute ownership of the personal property. Words which give a fee in real estate will give an absolute property in personal estate. It is true here is a contingent limitation over by way of executory devise. But the contingency may never occur. The plaintiff, though he has now but one child, may have others, and lose the child now living.

But the conclusive answer to the objections to the plaintiff's claim of possession is, that by the language of the will, the right of possession is given to him in clear and unambiguous terms. And he is to hold the property without giving security. The plaintiff is the absolute owner of the personal estate given to him by the will ; but he will hold it in trust to preserve the property, so that after his death it may be distributed among the testator's grandchildren, according to the terms of the will, in case he should die leaving but one child.

That a trust is created by the terms of the will is very clear. In *Malim* v. *Keighley,* 2 Ves. Jr. 333, the testator, in case the residue of the whole of his personal estate, after payment of debts and sundry legacies, should become vested in any one of

his daughters, gave and bequeathed the same to such daughter, her executors and administrators, recommending it to such daughter to dispose of the same, after her own death, unto and among the children of his other daughters in his will named. The question was, whether the word " recommend " was equivalent to an express direction, or so imperative as to raise a trust ; and it was held that it was. The master of the rolls lays down the rule thus : " Whenever any person gives property, and points out the object, the property, and the way in which it shall go, that does create a trust, unless he shows clearly, that his desire expressed is to be controlled by the party, and that he shall have the option to defeat it." The same principle is laid down in *Pierson* v. *Garnet*, 2 Bro. C. C. 38. 226.

In the present case, the contingent gift to the grandchildren is express, and there can be no doubt that the plaintiff will hold the property subject to the trust. And we can have no doubt, from the language of the will, that the testator intended he should so hold it, and that he considered that the property would be perfectly safe in his hands. On this ground, therefore, we are of opinion that the action is well maintained. And a majority of the court are of opinion that the plaintiff must hold the property, devised and bequeathed to him in trust, subject to the limitation over.

PUTNAM, J. With all possible deference to my learned brethren, I have not been able to agree with them in the elaborate opinion just pronounced ; and without wasting any time in expressions of vain regrets, I shall proceed directly to assign the reasons of my dissent.

The controversy relates to the plaintiff's title, under the will, to the part of the personal estate therein bequeathed to him.

My learned brethren have decided that the plaintiff has only the use of it for his life, with a power to devise the same subject to certain contingencies ; while on the other hand I think that the testator intended to give it to the plaintiff absolutely. My brethren decide that the devise to the plaintiff, in the first clause of the will, of one third of the estate of the testator, real as well as personal, was subject to the limitations contained in

the last clause ; while on the other hand I think there is a clause intervening, exempting the personal estate from any limitation, and giving it to the plaintiff absolutely.

It is clearly settled that if the testator gave to the plaintiff the right to dispose of the personal property to his own use, the limitation over would be void. I think that such an intent is manifest. It appears that the testator had three children, namely, one son who is the plaintiff, and two daughters, viz. Georgiana A. who is the wife of the defendant, and Mary, who is the wife of Thomas Dixon. He bequeathed certain parts of his real estate to trustees, at an appraisement thereof to be made, for the use of his daughters for their respective lives, without any power in their husbands to control the same, with remainder over ; and he bequeathed to the plaintiff also certain real estate, describing the same particularly, at an appraisement thereof to be made, and then, from the residuum, he gave to each child so much as would amount to one third of his estate, taking into account the advancements which had been made to them. This action is brought to recover so much of that *residuum*, as with the real estate *specifically* devised, and the advancements which have been made, will make up one third part of the whole estate of the testator.

It is important to understand what the testator meant by property "specifically devised," and what he meant by the genera residuum of his estate. I think it clearly appears that by the former he meant his real estate ; and by the latter he meant his personal estate, or any other estate which he might acquire. I will endeavor to make this position clear, by referring to the will.

In the first place, it is certain that by the words "specifially devised " he did not mean what is, strictly and technically considered, a specific legacy ; such, for example, as the gift of a particular chattel; *Hinton* v. *Pinke*, 1 P. W. 540, and *note*, for there is no such legacy or gift in the will. But he did mean, by estate or property specifically devised, his real estate. Thus in the devise to the plaintiff, after describing certain stores and other real estate particularly, he says, "and in order to make

up to my son Fitzhenry his said equal third part of my estate, I do give, bequeath and devise to him and his heirs and assigns, so much of my other property not *specifically* devised, as, with all sums of money given to him by way of advancement, shall amount to such third part of my estate." And so in the devise to the trustees for the use of Mary; " so much of my other estate not herein *specifically* devised," to make up her third. And again he explains, in the devise for the use of his daughter Mary, what he means by other property — as being property " exclusive of the real estate *specifically devised* for her use." And again the trustees are directed to pay the interest, &c. of the stocks, &c. to Mary, taking her receipt, as they are above directed in respect to the " real estate above specifically devised." Then it appears very clearly, that by the estate specifically devised, the testator meant his real estate, of the value, as by appraisement, of $ 273,000 ; and that by the general residuum, he meant his other estate, which was his personal estate. It was appraised at $ 175,348.

The devise to the plaintiff, in the first clause of the will, is in the following words : " I give and bequeath to my son Fitzhenry Homer and his heirs and assigns (subject to the limitations hereinafter made) one equal third part of all my estate ; and in part of, and towards his share, I give and devise to him and to his heirs and assigns, to his and their own use for ever, my store and land under " &c., &c. (describing divers parcels of real estate,) and proceeding thus : " And in order to make up to my said son Fitzhenry his said equal third part of my estate, I do give, bequeath, and devise to him and his heirs and assigns, so much of my other property not specifically devised, as, with all sums of money, given to him by way of advancement, shall amount to such third part of my estate : But if my said son shall have but one child, living at the time of his decease, then it is my will that such one child should take but one third part of its father's share of my estate as is hereinafter particularly provided." And the last clause in the will makes the following provision. " And whereas I have hereinbefore made no express provision for the case of my son and two daughters leav-

ing respectively but one child living at their decease ; now it is my will, that in case my said son and daughters shall die leaving only one child living at their deaths respectively, and no issue then living of any other child, then it is my will that such only child shall take one undivided third part, and no more, of the whole property which would have fallen to the share of the said child's parent in my estate, by this my will ; and I do give and bequeath the said third part accordingly. And the other two third parts of said parent's share shall enure to and be divided among my other children, and their legal representatives, share and share alike, in like manner, to all intents and purposes, as they take and hold their own original shares of my estate under this my will ; and I give the same accordingly."

It is contended for the defendant, that the plaintiff, in virtue of these clauses, has only a life estate in the property, and that there is a valid limitation of the same over, upon certain contingences. For, although the property is given to the plaintiff and his heirs and assigns forever, it is, at the same time, said to be subject to the limitations which have been cited. And it may be admitted for the sake of the argument, that, taking the first and the last clauses together, if there were nothing in the will to the contrary, the plaintiff would not be entitled to the absolute property ; but that in the event of his leaving but one child, and no issue of any other child, at his death, the limitation of the property over would be a good executory devise. But there is something in the will to the contrary. And the clause is in the words following : " And as to the general residuum of my estate, not herein specifically devised or bequeathed, whatsoever the same may be, and wheresoever situate, and whether now belonging and coming to me, or hereafter to be acquired, I give, devise and bequeath the same, as before provided, equally to be divided among my said children and their heirs and assigns ; *the share of my said son to be held by him to his own use and benefit forever, and the shares of my two daughters to be held in trust for the use and benefit of my said daughters and their heirs and assigns, in like manner as is above provided in respect to the portions hereinbefore specifically devised and bequeathed to them respectively.*"

This clause was inserted after he had disposed of his whole estate *uno flatu,* subject to limitations over.    It stands by itself, and is not, *unless by construction,* subject to any limitation.    It is as if he had said, I have subjected my real estate, which I have specifically devised, to certain limitations.    My son has therefore only a qualified interest in it ; but it shall not be so in respect to his share of the personal estate.    He shall hold *that* to his own use and benefit forever.

The share of his son was to be held by him, not, as is said in regard to the shares of his two daughters, "as is above provided in respect to the portions hereinbefore specifically devised and bequeathed to them respectively ; " *but it was to be held by him " to his own use and benefit forever."*    The share of the son was absolute.    He was to have the complete control, possession and disposition of his part of the general residuum.    But the shares of the daughters were placed in trust, and the use limited for their lives.

It has been argued that the phrase, " as is above provided in respect to the portions hereinbefore specifically devised and bequeathed to them respectively," applies as well to the share of the son as to the shares of the daughters, and is of course equivalent to saying, subject to the limitations therein applicable to the estate specifically devised.    But I do not think this clause is liable to that construction.    The testator declared that the share of his son (in the general residuum) should be held by him *to his own use and benefit forever;* and there he leaves it, so far as the son was concerned.    He then proceeds to exclude any conclusion that the shares of his daughters were to be held in like manner, by declaring that their shares should be held in trust for their use and benefit, in like manner as is above provided in respect to the portions herein before specifically devised and bequeathed to *them respectively.*    To whom ?    To the two daughters unquestionably.    He was not speaking of the son, in that closing paragraph, but of his two daughters' estate.    There is no devise to the son in trust ; but the shares of the two daughters were to be held in trust, and in like manner as it was therein before specifically devised to *them,* i. e. the two daughters —

the immediate antecedent to " them "; whereas his declared in-tent, in this clause, was directly otherwise in respect to his son. He was to hold his share in that fund *himself;* not as a trustee for others, not upon any contingencies ; but *for his own use for-ever,* as cannot be too often repeated.

Again, it has been suggested that the saying, in this clause, that his son should have the estate forever, is no more than is said in the first clause. He was to have the estate, devised in that clause, to him and his heirs and assigns forever, but subject to the limitations ; and by reasonable construction, it is argued, the words " subject to the limitations thereinafter contained," should be added by implication to the clause under considera-tion, in respect to the general residuum.

I think if the clause now under consideration should be read, as it stands, it would be clear beyond any doubt, that the plain-tiff would have the absolute property in that part of the estate. To arrive at any other result, the whole clause must either be stricken out and disregarded, or something must be added by way of construction or implication.

It has been argued, that this clause is not inconsistent with the other parts of the will. Why was it inserted, if it makes no difference ? The testator undertakes to deal with a very large proportion of the estate given to his son, in which, without this clause, his son would be sure of only a life estate; but with this clause, as it stands, he would have the absolute property. And is this to be put down as a testamentary disposition without any design ? as making just such an arrangement as he had al-ready made ? But it is said this clause was to make it clear that the son was to have the possession ; his share was to be *held* by himself, and not put into the hands of any other person in trust for him. Now the words in the first clause were suffi-cient for that purpose. It was a devise to him, and his heirs and assigns forever, of one third of the whole estate ; which would give him sufficient right to the possession, subject indeed to the limitation ; so that the new clause was not required for that reason.

It has been argued for the defendant, that as the limitation

over is contained in the last clause of the will, it should there-fore govern and control the previous contradictory clauses con-cerning the general residuum ; and there are authorities which maintain that position. Some of them are cited in 4 Kent Com. (3d ed.) 534, *note.* In 4 Mass. 215, *Dawes* v. *Swan,* it is said that if a latter clause is repugnant to a former, the latter shall prevail, because it is the last determination of the testator ; *unless the intention of the testator, apparent from other parts of the will, leads to a different conclusion.*

The qualification certainly nullifies the rule. It is one u strument which is to be construed. The whole is to be taken into consideration, to ascertain the intent ; and I cannot but think with Chancellor Walworth, (2 Paige, 131,) that the rule is " more fanciful than sound " which regards one part as entitled to more respect, or as manifesting more certainly the intent, than another, merely from its position in the will.

The meaning of the clause should be regarded more than its position in the instrument. The intent (to use the strong lan-guage of Mr. Justice Wilmot, 3 Bur. 1541,) " is to be col-lected from the whole will — *ex visceribus testamenti.*" Vide Ram on Wills, 31. 64. " It is quite immaterial in what part of the will the intent is found." " However the words are scattered, if they explain the intent, they are to be collected and put togeth-er, that the particular devise may have the effect intended."

The will is executed after it has been made to express the final disposition. It may be presumed to have been read by or to the testator, as it has been finished or prepared, with the al-terations, interlineations and erasures which had been made. The court have no means of knowing judicially what was the last suggestion. The intent is to be ascertained from a consid-eration of the whole instrument, and is to be carried into effect so far only as it is consistent with the rules of the law. Ram on Wills, 64, citing Willes, 3. 3 Bur. 1622. 1625. Cas. Temp. Talb. 160. 1 Barn. & Ald. 137. See also *Doe* v. *Applin,* 4 T. R. 82. *Robinson* v. *Robinson,* 1 Bur. 44. 2 Fonbl. (3d ed.) 58, *note.* For if the testator should give the absolute control of the property to the first taker, the limitation

over would be void.   Vide 2 Kent Com. (3d ed.) 352 – 354, and the cases there cited.   It would be an entirely inconsistent arrangement.   This rule applies as well to real as to personal estate.   *Tilbury* v. *Barbut*, 3 Atk. 617.   To use the words of Lord Hardwicke, " where there is a fee mounted on a fee, it is a void devise."   A fee may be devised upon a contingency, as in the leading case of *Pells* v. *Brown*, Cro. Jac. 590. And so in *Heath* v. *Heath*, 1 Bro. C. C. 147, where a devise was " to E. H. forever, that is if he have a son or sons who shall attain the age of twenty-one, but if he should chance to die without a son or sons to inherit, my will is that the son of my son W. H. shall inherit " ; this was considered a contingent fee simple to E. H., depending on his having a son to inherit, and the bequest to the son of his son W. H. was a good executory devise.

It has been argued, that inasmuch as the share of the residuum is to be divided equally among the children of the testator and their heirs and assigns, it cannot have reference to that other property which the testator gave to make up the third part of the estate given to each that was deficient, — which would be unequal, — but referred to such property, real or personal, as should be thereafter acquired.   I do not think the clause is to be narrowed down to that construction.   Let us take the words. They are, " I give, devise and bequeath the same " (i. e. the general residuum) " *as before provided*, equally to be divided " &c.   And how was it " before provided " ?   So much of that other property not specifically devised, as would, together with advancements, make up a full third part of the estate.   It was equality in the whole fund, and not in the shares in the general residuum, of which the testator was speaking.   It would be doing violence to suppose it was to affect only the estate which he should thereafter acquire.   On the contrary, the testator applied it expressly to that part of his estate which he had not specifically devised.   It was in reference to the plaintiff's share in that property, little or much, which was requisite to make up his one third part of the estate of the testator, that this clause was made.   It was the plaintiff's share in that part of the estate,

which the testator declared, in so many words, that his son should hold to his own use and benefit forever, which is, by the opinion of the court now pronounced, to be held by him, subject to accountability over, and as trustee for remainder-men. I cannot believe that this is according to the intent of the testator.

Aga'n, it is said that the general residuum clause related to real estate thereafter to be acquired. But the will was made after the revised statutes passed. Real estrte, in virtue of those statutes, may pass by a will, although the testator acquired it after its execution. The clause was not necessary for that purpose. And, with great respect, it would seem to me somewhat strange that a testator should speak of estate thereafter to be acquired, as constituting the general residuum of the estate which he was then devising.

Whenever the court can satisfactorily arrive at the conclusion that the legatee has the absolute disposal of the property, the limitations over will be ineffectual. Thus in *Attorney General* v. *Hall*, Fitzg. 314, the devise was, " I give and bequeath," &c. [Here the judge stated the devise in full, as it is stated by *Wilde*, J. *ante*, pp. 200, 201.]

The testator died ; and after three years F. H. took on him self the execution of the will, and afterward suffered a common recovery of the real estate and then made his will, and his wife executrix, and died without issue. The court were unanimous that the limitation over to the Goldsmiths' Company was void ; as the absolute ownership had been given to F. H.

So far as it was a devise of real estate to F. H. and the heirs of his body, it became absolute on the suffering of the common recovery ; and according to a well known rule of the law, words which would create an estate tail in real estate shall be,construed to pass the absolute property in personal estate. The court said that the son had the power to dispose of the whole, although the power was not expressly given, but resulted from his interest.

So in *Billing* v. *Billing*, 5 Simons, 232, the devise was of all the property, which the testator should die possessed of, to trustees to invest and place the whole proceeds and amount for

the use and benefit of his nephew J. E. B. to be paid at such time and manner as the trustees should see fit and proper ; and when J. E. B. should arrive at the age of twenty-one years, that the trustees should by deed covenant with J. E. B. to pay the amount of the interest or proceeds of the money and effects which should have come to the hands of the trustees, as they should think most for his advantage, in weekly or quarterly payments, for and during his natural life.   The vice chancellor said, " In the first part of this will there is an absolute bequest, and I cannot cut down that which is plain, because there is, in a subsequent part of the will, an imperfectly expressed intention that J. E. B. should take for life only."   So in a case before Lord Eldon, where the question was, whether the testator charged his real estate with the payment of his debts, his lordship said, the result of all the cases is, that the judge, in every instance, is to look at the *whole will together*, and then to ask himself *whether he is convinced it was the testator's intent to* exempt his personal estate.   *Bootle* v. *Blundell,* 1 Meriv. 193. See Ram on Wills, 230, and cases there cited.   And so the judge must proceed in the ascertaining of any other intent to be collected from the will.   In effect, it is the settling of a fact, according to rules prescribed by the law.   It is not expedient to cite at large the great number of cases which might illustrate the point.   See 10 Johns. 14, *Moffat* v. *Strong.*   10 Johns. 20, *Jackson* v. *Bull.*   Ram on Wills, 100 – 107.

Now it would be very unreasonable to suppose that the testator would have inserted this long provision, occupying a quarto page, touching that great part of his estate called the general residuum, without any reason.   It would rather seem that the testator was dissatisfied with the provision he had before made in respect to his son, and was desirous of exempting that part of the personal estate which was given to him, from the limitations to which by the first general clause in the will it was subjected. It operated as an exception to the generality of the limitation contained in the first clause.   " This is my intent in regard to this general residuum, any thing in my will to the contrary notwithstanding."

The situation and circumstances of the family are properly to be taken into consideration. The testator had one son and two daughters, who were all married. His son had one child ; each of his daughters had several children. All the property which he gave to his daughters was placed in trust, for their own use for life, without any control of their husbands. with remainder over to their children ; a provision which (as daily experience teaches) might prove beneficial to the husbands themselves as well as to their wives and their children. The plaintiff was appointed one of the trustees ; and so great was the confidence reposed in his ability and honesty, that the testator would not require any bondsman for his faithful performance of his trust. He was also appointed a joint executor ; but he has resigned that office. He was an only son ; and there has not been a suggestion that his father's confidence was misplaced. If the testator intended to give the absolute property to his son, and intended also to make the limitations extend to the general residuum, then one or the other intent must fail. They cannot stand, or be carried into effect, together. The intent to give the absolute prop erty cannot be effected consistently with the intent to give away or limit over two thirds of it upon a contingency. It would then be the duty of the court to fulfil the principal rather than the subordinate intent. And to judge correctly upon that matter, the *reasonableness* of the one compared with the other should be taken into consideration. Words of limitation for life or in tail have been implied to carry into effect the chief intent. Amb. 355, *Stanley* v. *Lennard.* 8 T. R. 5, *Doe* v. *Halley.* Ram on Wills, 56. But not if the devise, in a particular case, be unreasonable. Cro. Jac. 74, *Horton* v. *Horton.* The testator then must give up the intent to give his son the absolute property in his share of the residuum, or give up the intent to limit his right to use and dispose of it as his own property. Which intent shall prevail ? I think it more reasonable to ascribe that intent to the testator which is express, which is just, natural and reasonable, rather than one which is to be drawn from doubtful legal inference, and which, to some extent, operates to the disinheritance, if not to the disparagement, of his son, and with-

out any apparent reason.   Did the testator intend to subject his son to the accountability of a trustee for remainder-men, for his share of the residuum ?  It is said that courts do not now require any security from such trustee.   *That* however must depend upon circumstances.   It has been held that he is to give an accountable inventory.  5 Johns. Ch. 349, and the cases there cited.  **We** have Lord Thurlow's opinion that an *inventory* should be given, by the legatee for life, to remainder-men.   We have no adjudi-cation in this court upon the point, and are free to adopt either rule.   But cases may be supposed where justice to the remainder-men would require that *security* should be given for the forthcoming of the property.   It would depend somewhat upon the pecuniary ability, but essentially on the good character, of the legatee for life.   See 5 Watts, 110.

Could the testator have supposed that the share he had given to his son in this part of his estate, for his own use forever, should be sold and invested, and that the interest only should be paid to him during his life ?   See *Howe* v. *Earl of Dartmouth,* 7 Ves. 137.

Again.   Consider the contingencies upon the happening of which the limitations over are to take place, and the consequences.   If the plaintiff should die leaving only one child, without issue then living of any other child, the plaintiff would have nothing to dispose of.   His only child would, by the will, take one third of what would otherwise, by the will, have vested in the plaintiff.   If he has no child, or if he has more than one child living at his death, the plaintiff has power to make a testamentary disposition of the whole, at his discretion.   He may give all of it to any one of his children, or he may make any other testamentary disposition of the whole, although he had no power to transfer or dispose of any part of the capital in his lifetime.

Suppose the residuum to amount to $ 180,000.   The children of the testator would take $ 60,000.   Suppose the plaintiff should die leaving one son, and leaving one sister, and two children, the legal representatives of a deceased sister.  The fund would be thus divided :  The only son of the plaintiff would take

$ 20,000. The two representatives of the deceased sister would each, in his own right, have $ 30,000, and each receive $ 10,000 from their uncle's share, making $ 80,000. The surviving sister would have $ 60,000 and $ 20,000 from her deceased brother's share, making $ 80,000.

A single day might bring forth such inequality. The child of the only son would take $ 20,000. The children of a deceased daughter would each take twice as much, and the surviving daughter would take four times as much of the estate, which was evidently, in the outset of the will, intended to be divided and given in equal third parts.

Now this argument is not to be met by saying that a man has a right to do what he will with his own ; that he has a right to make even a whimsical disposition of his property, if he pleases. This is admitted ; but that is not the point under consideration. It may be taken for granted, for the argument, that either of the intents was lawful, standing alone ; but as they cannot stand to gether, the question is, which shall be supported ?

The intent to give the absolute property, as declared in the clause relating to the general residuum, must yield to the limitation, or e converso. And in the case of clear conflicting intents, it is for the court to determine which is reasonable or unreasonable ; which is chief and principal, or subordinate and secondary. Goodrich v. Lambert, 10 Connect. 452, and books there cited.

I am very happy to agree with my brethren that the plaintiff is entitled to recover, and that he is not to give any bond to account for the property. But I dissent from so much of the opinion, as goes to deprive the plaintiff of the right to have and control the property absolutely.

*Judgment for the plaintiff.*

Judgment was entered thus : " Whereas it appears to the court that by the will of Benjamin P. Homer, the said Fitzhenry Homer is entitled to the possession of the personal property bequeathed to him, which is the subject of this suit, to be held by him subject to the provisions and limitations in the said will contained : It is therefore considered by the court, that the plaintiff do recover," &c.