JOHN SMITH T., PLAINTIFF v. ROBERT BELL, DEFENDANT.

The will of B. G. contained the following clause: " also, I give to my wife
   Elizabeth Goodwin, all my personal estate whatsoever and wheresoever, and
   of what nature, kind and quality soever, after payment of my debts, legacies
   and funeral expenses, which personal estate I give and bequeath unto my said
   wife, Elizabeth Goodwin, to and for her own use and disposal absolutely : the
   remainder after her decease to be for the use of the said Jesse Goodwin," the
   son of the testator.  Jesse Goodwin took a vested remainder in the personal
   estate, which came into possession after the death of Elizabeth Goodwin.

In this case it is impossible to mistake the intent.  The testator unquestionably
   intended to make a present provision for his wife, and a future provision for
   his son.  The intention can be defeated only by expunging or rendering to-
   tally inoperative the last clause of the will.  In doing so, a long series of opi-
   nions, making the intention of the testator the polar star to guide in the con-
   struction of wills, must be disregarded, because we find words which indicate
   an intention to permit the first taker to use part of the estate bequeathed.

The first and great rule in the exposition of wills, to which all rules must bend,
   is, that the intention of the testator expressed in his will shall prevail, provided
   it be consistent with the rules of law.  This principle is generally asserted in
   the construction of every testamentary disposition.  It is emphatically *the will*
   of the person who makes it, and is defined to be " the legal declaration of a
   man's intentions, which he wills to be performed after his death."  These in-
   tentions are to be collected from his words; and ought to be carried into effect
   if they be consistent with law.

In the construction of ambiguous expressions, the situation of the parties may
   very properly be taken into view.  The ties which connect the testator with
   his legatees, the affection subsisting between them, the motives which may
   reasonably be supposed to operate with him, and to influence him in the dis-
   position of his property, are all entitled to consideration in expounding doubt-
   ful words, and ascertaining the meaning in which the testator used them.

The rule that a remainder may be limited after a life estate in personal property,
   is as well settled as any other principle of our law.  The attempt to create
   such limitation is not opposed by the policy of the law, or by any of its rules.
   If the intention to create such limitation is manifested in a will, the courts
   will sustain it.

It is stated in many cases that where there are two intents, inconsistent with
   each other, that which is primary will control that which is secondary.

Notwithstanding the reasonableness and good sense of the general rule, that the
   intention shall prevail, it has been sometimes disregarded.  If the testator at-
   tempts to affect that which the law forbids, his will must yield to the rules of
   law ; but courts have sometimes gone further.  The construction put upon
   words in one will has been supposed to furnish a rule for construing the same
   words in other wills; and thereby to furnish some settled and fixed rules of
   construction, which ought to be respected.  We cannot say this principle
   ought to be totally disregarded; but it should never be carried so far as to de-
   feat the plain intent, if that intent may be carried into execution without vio-
   lating the rules of law.  It has been said truly, " that cases on wills may guide

us to general rules of construction, but unless a case cited be in every respect directly in point, and agree in every circumstance, it will have little or no weight with the court, who always look upon the intention of the testator as the polar star to direct them in the construction of wills."

THIS case came before the court on a certificate of division in opinion of the judges of the circuit court of the United States for the eastern district of Tennessee.

In the circuit court, John Smith T. instituted an action of trover against Robert Bell for the recovery of the value of certain negroes named and described in the declaration. The defendant pleaded not guilty, upon which plea issue was joined.

The facts of the case were agreed by the parties, and the plaintiff moved the court for judgment for two thousand six hundred and fifteen dollars and sixty-two and a half cents, the agreed value of the negroes; if the court should be of opinion that the plaintiff was entitled to recover.

Upon the case agreed the following questions arose, upon which the judges of the court were divided, and the division was certified to this court: whether by the will of Britain B. Goodwin, Elizabeth Goodwin had an absolute title to the personal estate of Britain B. Goodwin, or only a life estate: and also whether Jesse Goodwin, the son of Britain B. Goodwin, by said will, had a vested remainder that would come into possession on the death of said Elizabeth; or was said remainder void.

The facts of the case agreed were as follow:

That Britain B. Goodwin, a citizen of the state of Tennessee, and resident in the district of East Tennessee, did, on the 17th day of October, in the year of our Lord one thousand eight hundred and ten, make and execute his last will and testament, in the words and figures following, to wit: " In the name of God, amen. I, Britain B. Goodwin, of the state of Tennessee, and county of Roane, yeoman, being mindful of my mortality, do, this 17th day of October, in the year of our Lord one thousand eight hundred and ten, and thirty-fifth year of independence of the United States of America, do make and publish this my last will and testament, in manner following: First, I desire to be decently buried in the place where I shall happen to die; also, I give and bequeath

unto my son, Jesse Goodwin, my young sorrel gelding and one feather bed, to be delivered to him by my executrix after my decease; also, I give to my wife, Elizabeth Goodwin, all my personal estate whatsoever, and wheresover, and of what nature, kind, and quality soever, after payment of my debts, legacies, and funeral expenses; which personal estate, I give and bequeath unto my said wife, Elizabeth Goodwin, to and for her own use and benefit and disposal absolutely: the remainder of said estate, after her decease, to be for the use of the said Jesse Goodwin: and I do hereby constitute and appoint my said wife, Elizabeth Goodwin, sole executrix of this my last will and testament.

In witness whereof, I have hereunto set my hand and seal, the day and year above written.

his<br>
BRITAIN B.  &#43;  GOODWIN [L. S.].<br>
mark

The foregoing will is duly witnessed, proved, and recorded.

It is further agreed, that said Britain B. Goodwin departed this life in the month of October 1811; that his wife, the said Elizabeth Goodwin, named in the foregoing will, took into her possession all the personal estate of said Britain B. Goodwin, under the bequest in said will to her, and retained the same until the month of November in the year of our Lord one thousand eight hundred and thirteen, when she intermarried with Robert Bell, the defendant in this suit; that she and Robert Bell kept the possession of said personal estate till the latter part of the year 1826, when the said Elizabeth Goodwin died. Said Robert Bell has kept the possession of said personal estate ever since, claiming the same as his own, under the bequest in said will to his said wife Elizabeth; among which are the following named negroes, to wit: Lucy, aged about forty-five; Jack, aged about twenty-six; Sophia, aged about twenty-four; Harry, aged about twenty-one; Alexander, aged about nineteen; and Ned, aged about thirteen; which said negroes are admitted to be of the value of two thousand three hundred and twenty-five dollars; which sum, with interest thereon from the 1st day of September 1827, at which time said negroes were demanded of defendant by plaintiff's agent; and it is agreed the said sum and interest would amount

[Smith v. Bell.]

to two thousand six hundred and fifteen dollars sixty-two and a half cents, which last sum is sought by plaintiff to be recovered of defendant in this action of trover. It is further agreed, that said Jesse Goodwin, the person named in the will of Britain B. Goodwin, did, in due form, execute to John Smith T., the plaintiff, the following bill of sale, to wit: " I have sold to John Smith T. all my right, title, interest, and claim to the estate of my father, Britain B. Goodwin; and I do hereby authorize the said John Smith T. to bring whatever suit or suits may be necessary to recover all of the property I am or may be entitled to from the said estate; to act in all cases as he, the said John, may think proper, and to convert the property he may recover to his own proper use, and give any receipts or acquittances in my name which may be necessary, hereby vesting the before named John Smith T. with all the power I could use in my own proper person, were I personally present; for value received.

· Witness my hand and seal this 31st day of March 1815.

JESSE GOODWIN [L. S.]."·

Said bill of sale has been duly proved and, registered, in pursuance of the statute of the state of Tennessee in such cases made and provided.

The case was argued by Mr Key for the plaintiff, with whom also was Mr Grundy; no counsel appeared for the defendant.

It was contended for the plaintiff, that in this, as in all cases of wills, such a construction is to be given as will carry into effect all the intentions of the testator; such as will give meaning and force to all the words of the will. A construction which will make some of the words senseless, and some of the provisions nugatory, ought to be rejected.

Here the difficulty arises from the words "to and for her own use and benefit, and disposal absolutely." They are thought to be added to show the extent of the wife's interest, and to describe her right to the property; and that, thus giving her an absolute and entire interest in the things, there is nothing left; no "remainder" for the son; and that the succeeding bequest to him is therefore void.

If these words were out of the will, the case would be a

clear one for the son; as in 12 Wheat. 568, where an absolute bequest of slaves is qualified by a subsequent limitation over.

Do these words, then, necessarily purport to define the extent of the wife's interest? If any other meaning can be given to them, this should not be, because they would thus be made tautological and senseless. The term "give" used before, implies all this. It is making the testator say over again what he had already said in this word, and would make some of the words of the will useless; and to assign this meaning to them, annuls the provision immediately succeeding in favour of the son.

It has been a frequent practice to adopt this mode of reasoning in the construction of wills; and to give another meaning to the words used by a testator, by the mere force of a succeeding provision in the instrument. This was done in the case cited from 12 Wheat. 568: so also in case of a fee-simple limited to a fee-tail, the word "heirs" has been construed to mean *children*. 2 Ves. 501; 1 Bro. C. R. 489; 8 Ves. 22. This mode of construction has been employed in order to use all the words of a will. The previous words are to be restrained and qualified by those used subsequently; and the subsequent words are to be more regarded, if they are in conflict with the previous language of the instrument. Chief Justice Parsons in Dawes v. Swann, 4 Mass. 208. May not, then, another meaning be given them? If susceptible of such, they ought to have it.

The testator had given the property by positive words; and he then inserts this parenthesis—not to describe what he had done, which was not necessary, but to do something which he thought he had omitted: to point out the *mode*, not the *extent*, in which his wife was to enjoy the property. It was to be " for her own use and benefit and disposal absolutely:" meaning that she should be uncontrolled in its enjoyment, unaccountable, not to be interfered with by him in remainder; or that it was to be her separate estate, not to be divested or affected by her future coverture. " At her disposal" makes it her separate property. Cited Bradley v. Westcott, 13 Ves. 445; 5 Maddock, 491; 7 Vin. Ab. 95, pl. 43. Or these words may mean the intention of the testator that the legatee should have

the property for her support. "Use and benefit" are equivalent terms to *support.*

Here the son is to have something, and therefore the wife of the testator was not to have all. He is to have the "remainder;" the remainder at the decease of the wife: that would be, what she had not used or disposed of for her support, or her benefit. During her life, the wife was to have the use of the property; at her death he is to have that which might remain, after her full enjoyment of all the benefits of the bequest. 1 P. Wms, 655; 1 Bro. C. R. 489; 2 Ves. 501. The testator's meaning sufficiently appears from the whole will. His first purpose was to provide for his wife as long as she lived, as far as might be necessary; to the whole extent of his means. For this end he uses the language, to her "use and benefit, and disposal absolutely." His second object was to provide for his son; and he gave him the "remainder" of the property, after the decease of his wife. What remainder? What his wife might have after supporting herself during her life. If the *use of the property* should be found insufficient, she might *dispose of it absolutely.*

Although she had a right to dispose of the property absolutely, her marriage with the defendant, Robert Bell, was not such a disposal as was contemplated by the will. The husband took the property as the legatee held it; subject to the remainder of the son, if not necessary to be disposed of for the use of the wife.

Nor should it be urged, that as nothing is said about the subsistence of the legatee, the interpleader which is claimed for the plaintiff will not be allowed. This was plainly implied; the intention of the testator is equally clear with that in the case cited. The nature of the property was such as to furnish an income to the wife, and to produce the means of her support and maintenance.

The gift of the "remainder" clearly shows that the testator meant there should be a remainder, after the use of the property by his wife; if there should be any remainder consistently with his wife's support until her decease. He intended to give his son what should then be left—what should "remain" of the property which she had enjoyed during life. He intended to give the legatee the "use," "benefit,"

[Smith v. Bell.]

and "disposal" of the negroes for all the purposes of the bequest, her support. She was not allowed to will the property away; she was allowed to dispose of it during her life; not at her death; because it was given to her for the support of her life.

Neither did the legatee, the wife of Britain B. Goodwin, or her husband, dispose of the property. It now remains in kind, as at the decease of the testator; and as such is claimed by the son.

The words of the will also indicate a limitation of the property, provided the use and benefit of the same should not be interfered with by such limitation. By giving the remainder after the decease of the legatee, the testator declared that it should not be disposed of at her death; thus qualifying the general words to a use, benefit and disposal *during her life,* which is equivalent to saying in express terms, that the use and benefit should be during life only.

If it is argued that such property might be consumed in the use, and therefore there can be no remainder limited in it: it is answered that the modern cases show that even after a life estate or interest in consumable things, such a remainder may be given. 3 Ves. 311; 1 Roper on Legacies, 209.

Mr Chief Justice MARSHALL delivered the opinion of the Court.

This case is adjourned to this court from the court of the United States for the seventh circuit and district of East Tennessee, on a point on which the judges of that court were divided in opinion.

The plaintiff brought an action of trover and conversion against the defendant, for several slaves in his declaration mentioned. He claimed the slaves under the following clause in the will of Britain B. Goodwin: "also, I give to my wife, Elizabeth Goodwin, all my personal estate whatsoever and wheresoever, and of what nature, kind and quality soever, after payment of my debts, legacies and funeral expenses, which personal estate I give and bequeath unto my said wife, Elizabeth Goodwin, to and for her own use and benefit, and disposal absolutely; the remainder of the said estate after her decease, to be for the use of the said Jesse Goodwin."

[Smith v. Bell.]

Elizabeth Goodwin took the estate of the testator into her possession, and intermarried with Robert Bell, the defendant. After which the said Jesse Goodwin sold his interest therein to the plaintiff, who, after the death of Elizabeth, instituted this suit. Upon the trial the following questions occurred, on which the judges were divided in opinion: "whether, by the will of said Britain B. Goodwin, said Elizabeth Goodwin had an absolute title to the personal estate of said Britain B. Goodwin, or only a life estate; and also, whether said Jesse Goodwin, by said will, had a vested remainder that would come into possession on the death of said Elizabeth, or was said remainder void?"

The first and great rule in the exposition of wills, to which all other rules must bend, is, that the intention of the testator expressed in his will shall prevail, provided it be consistent with the rules of law. Doug. 322; 1 Black. Rep. 672. This principle is generally asserted in the construction of every testamentary disposition. It is emphatically *the will* of the person who makes it, and is defined to be "the legal declaration of a man's intentions, which he wills to be performed after his death." 2 Black. Com. 499. These intentions are to be collected from his words, and ought to be carried into effect if they be consistent with law.

In the construction of ambiguous expressions, the situation of the parties may very properly be taken into view. The ties which connect the testator with his legatees, the affection subsisting between them, the motives which may reasonably be supposed to operate with him, and to influence him in the disposition of his property, are all entitle to consideration in expounding doubtful words, and ascertaining the meaning in which the testator used them.

In the will under consideration, but two persons are mentioned—a wife and a son. The testator attempts, in express words, to make a provision for both out of the same property. The provision for the wife is immediate, that for the son is to take effect after her death. The words of the will make both provisions, but it is doubted whether both can have effect. In the first member of the sentence he says, "I give to my wife, Elizabeth Goodwin, all my personal estate whatsoever and wheresoever, and of what nature, kind and quality soever,

after payment of my debts, legacies and funeral expenses; which personal estate I give and bequeath unto my said wife, Elizabeth Goodwin, to and for her own use and benefit and disposal absolutely."

It must be admitted that words could not have been employed which would be better fitted to give the whole personal estate absolutely to the wife; or which would more clearly express that intention. But the testator proceeds: "the remainder of said estate, after her decease, to be for the use of the said Jesse Goodwin." Jesse Goodwin was his son.

These words give the remainder of the estate, after his wife's decease, to the son, with as much clearness as the preceding words give the whole estate to his wife. They manifest the intention of the testator to make a future provision for his son, as clearly as the first part of the bequest manifests his intention to make an immediate provision for his wife. If the first bequest is to take effect according to the obvious import of the words taken alone, the last is expunged from the will. The operation of the whole clause will be precisely the same as if the last member of the sentence were stricken out; yet both clauses are equally the words of the testator, are equally binding, and equally claim the attention of those who may construe the will. We are no more at liberty to disregard the last member of the sentence than the first. No rule is better settled, than that the whole will is to be taken together, and is to be so construed as to give effect, if it be possible, to the whole. Either the last member of the sentence must be totally rejected, or it must influence the construction of the first so as to restrain the natural meaning of its words: either the bequest to the son must be stricken out, or it must limit the bequest to the wife, and confine it to her life. The limitation in remainder, shows that, in the opinion of the testator, the previous words had given only an estate for life. This was the sense in which he used them.

It is impossible to read the will without perceiving a clear intention to give the personal estate to the son after the death of his mother. "The remainder of the said estate, after her decease, to be for the use of the said Jesse Goodwin." Had the testator been asked whether he intended to give any thing

by this bequest to his son, the words of the clause would have answered the question in as plain terms as our language affords.

If we look to the situation of the parties, to the motives which might naturally operate on the testator, to the whole circumstances, so far as they appear, in the case; we find every reason for supporting the intention, which the words, giving effect to all, of themselves import.

The only two objects of the testator's bounty, were his wife and his son. Both must have been dear to him. The will furnishes no indication of his possessing any land. His personal estate was probably small, too small, to be divided. It appears to have consisted of a negro woman and four others, probably her children. Their relative ages, which are stated in the plaintiff's declaration, would indicate that the woman was the mother of the other four. A sixth is sued for, but he was not born at the death of the testator. The value of the other articles, which constituted his personal estate, is not mentioned, but it was probably inconsiderable. Farmers and planters, having no real estate, and only five slaves—a woman and four children, have rarely much personal estate in addition to their slaves. The testator was not in a condition to make any present provision for an only child, without lessening that he wished to make for his wife. He therefore gives to his son only a horse and one feather bed. The residue is given to his wife.

What feelings, what wishes might be supposed to actuate a husband and a father, having so little to bestow on a wife and child he was about to leave behind him? His affections would prompt him to give something to both. He could not be insensible to the claims of either. But if his property would not, in his opinion, bear immediate division, the only practicable mode of accomplishing his object, would be to give a present interest to one, and a future interest to the other. All his feelings would prompt him to make, as far as was in his power, a comfortable provision for his wife during her life, and for his child after her decease. This he has attempted to do. No principle in our nature could prompt him to give his property to the future husband of his wife, to the exclusion of his only child. Every consideration, then, suggested by the relation of the parties and the circumstances of the case, comes

[Smith v. Bell.]

in aid of that construction which would give effect to the last as well as first clause in the will; which would support the bequest of the remainder to the son, as well as the bequest to the wife. It is not possible to doubt that this was the intention of the testator.

Is this intention controverted by any positive rule of law? Has the testator attempted to do that which the law forbids?

The rule that a remainder may be limited, after a life estate in personal property, is as well settled as any other principle of our law. The attempt to create such limitation is not opposed by the policy of the law, or by any of its rules. If the intention to create such limitation is manifested in a will, the courts will sustain it. Some other rule of law then must bear on the case, or the intention will prevail.

It is stated in many cases, that where there are two intents inconsistent with each other, that which is primary will control that which is secondary: but the intent to provide for the wife during life, is not inconsistent with the intent to provide for the son, by giving him the same property after her decease. The two intents stand very well together, and are consistent; as well with the probable intention, as with the words of the testator. The intention to give the personal estate absolutely to the wife, is, it is true, inconsistent with the intention to give it after her decease to his son; but which of them is the primary intent? which ought to control the other? If we are governed by the words, if we endeavour to give full effect to them all, or if we are influenced by the relation of the parties, and the motives which probably governed in making the will, no such inconsistent intentions exist: but if they do exist, we perceive no motive for ascribing any superior strength to that which would provide for those who might claim the estate of the wife after her decease; to that which would provide, after her decease, for the only child of the testator.

To create these inconsistent intentions—this intention to do, in limiting this remainder, what the policy of the law forbids, the bequest to the wife must be construed to give her the power to sell or consume the whole personal estate during her life; which is totally incompatible with a gift of what remains at her death. The remainder, after such a bequest, is said to be void for uncertainty.

[Smith v. Bell.]

As this construction destroys totally the legacy, obviously intended for the son by his father, it will not be made unless it be indispensable. No effort to explain the words in a different sense, can do so much violence to the clause, as the total rejection of the whole bequest, given in express terms to an only son.

The first part of the clause which gives the personal estate to the wife, would undoubtedly, if standing alone, give it to her absolutely. But all the cases admit that a remainder limited on such a bequest would be valid, and that the wife would take only for life. The difficulty is produced by the subsequent words. They are "which personal estates I give and bequeath unto my said wife, Elizabeth Goodwin, to and for her own use and benefit, and disposal absolutely." The operation of these words, when standing alone, cannot be questioned. But suppose the testator had added the words "during her life." These words would have restrained those which preceded them; and have limited the use and benefit, and the absolute disposal given by the prior words, to the use and benefit, and to a disposal for the life of the wife. 13 Ves. 444. The words then are susceptible of such limitation. It may be imposed on them by other words. Even the words "disposal absolutely" may have their absolute character qualified by restraining words, connected with, and explaining them to mean, such absolute disposal as a tenant for life may make.

If this would be true, provided the restraining words "for her life" had been added, why may not other equivalent words, others which equally manifest the intent to restrain the estate of the wife to her life, be allowed the same operation. The words "the remainder of said estate, after her decease, to be for the use of the said Jesse Goodwin," are, we think, equivalent. They manifest with equal clearness the intent to limit the estate given to her, to her life, and ought to have the same effect. They are totally inconsistent with an estate in the wife, which is to endure beyond her life.

Notwithstanding the reasonableness and good sense of this general rule, that the intention shall prevail, it has been some times disregarded. If the testator attempts to effect that which the law forbids, his will must yield to the rules of law. But

courts have sometimes gone farther. The construction put upon words in one will, has been supposed to furnish a rule for construing the same words in other wills; and thereby to furnish some settled and fixed rules of construction which ought to be respected.

We cannot say that this principle ought to be totally disregarded; but it should never be carried so far as to defeat the plain intent; if that intent may be carried into execution without violating the rules of law. It has been said truly, 3 Wils. 141, "that cases on wills may guide us to general rules of construction; but, unless a case cited be in every respect directly in point, and agree in every circumstance, it will have little or no weight with the court, who always look upon the intention of the testator as the polar star to direct them in the construction of wills."

In Porter v. Tournay, 3 Ves. 311, Lord Alvanley declared his opinion to be, "that a gift for life, if specific, of things *quæ ipso usu consumuntur*, is a gift of the property; and that there cannot be a limitation after a life interest in such articles." In the case of Randall v. Russell, 3 Mer. 190, the master of the rolls inclines to the same opinion. But these cases do not turn on the construction of the wills, but on the general policy of the law in cases where the legacy is of articles where "the use and the property can have no separate existence."

One of the strongest cases in which the court of chancery has decided that the legatee first named took absolutely, though there was a limitation in remainder, is that of Bule v. Kingston, 1 Mer. 314.

Ann Ashby, by her will, gave the sum of fifteen hundred pounds, bank annuities, to John Earl Talbot, his executors, &c. in trust for her sister Charlotte Williams for her separate use; and "all other sums that may be due to her," she left in trust with the said John Earl Talbot for the use of her said sister: "what I have not otherwise disposed of, I give to my said sister the unlimited right of disposing of by will, excepting to E. P. &c.; and in case my said sister dies without a will, I give all that may remain of my fortune at her decease to my godson William Ashby. The rest and residue of my fortune I give to my sister Charlotte Williams, making her the sole executrix of this my last will and testament."

[Smith v. Bell.]

Charlotte Williams made a will, by which she appears to have disposed of the whole of her own estate, but not to have executed the power contained in the will of Ann Ashby. What remained of her estate was claimed by the representative of the husband, who survived his wife, Charlotte Williams; and also by William Ashby, under the bequest to him of what might remain at the decease of Charlotte Williams; if she should die without a will. The master of the rolls being of opinion that the whole vested in Charlotte Williams, decided in favour of the representative of her husband, and that the bequest to William Ashby was void.

In support of this decree it might be urged that, as the remainder to William Ashby was limited on the event of her sister dying without a will, which event did not happen, the remainder could not take effect. Or, which is stronger ground, that the whole will manifests an intention to give every thing to her sister; and that the eventual limitation in favour of William Ashby, accompanied as it is by various explanatory provisions, does not show such an intention in his favour as to defeat the operation of the clauses in favour of Charlotte Williams, which show a superior solicitude to provide for her. The testatrix gives to her sister the unlimited right of disposing of whatever may not have been bequeathed by herself, thereby enabling her to defeat the contingent remainder to William Ashby; and then gives to her sister all the rest and residue of her fortune. The sister is obviously, on the face of the whole will taken together, the favourite legatee; and no violence is done to the intention, by giving to bequests to her their full effect, uncontrolled by the contingent remainder to William Ashby.

But the master of the rolls does not place his decree on this ground, and we must understand it as he understood it himself.

He says, it is impossible to make sense of the will, if the residuary clause is to be taken as distinct from what goes before it. "It is evident the testatrix perceived a defect in her *intended* disposition of the entire property in favour of Mrs Williams, and that she had only given a power where she meant to give the absolute interest. To supply that defect she gives the residue by the clause in question; and then the will

Vol. VI.—L

is to be read as if it stood thus:—'I give to Charlotte Williams the residue of my estate, together with the right of disposing of the same by will, except to E. P.; and if she dies without a will, then I give whatever may remain at her death to William Ashby.' She gives to Charlotte Williams, as a married woman, the right of disposing by will of the property *vested* in her, independently of the control of her husband, and she intended at the same time, that if any thing was left undisposed of by her, it should go to William Ashby. But this is an intention that must fail on account of its uncertainty. Charlotte therefore took the absolute interest in the property," &c.

This opinion is not so carefully expressed as to remove all doubts respecting its real meaning, and to show precisely whether the uncertainty which destroyed the validity of the remainder belonged to all cases in which property was given in general terms, with a power to use it and to dispose of it; or belonged to those cases only in which analogous circumstances were found. The master of the rolls admits that the testatrix intended to dispose of the entire property in favour of Mrs Williams, but perceived that she had only given a power, where she meant to give the absolute interest. In speaking afterwards of the right given to Charlotte Williams of disposing by will, he says, it is " of the property *vested* in her independent of the control of her husband."

The whole opinion furnishes strong reason to believe that the master of the rolls considered himself as pursuing the intention of the testatrix in declaring the remainder void, and that Charlotte Williams took absolutely. It would be difficult, we think, to support the proposition, that a personal thing, not consumed by the use, could not be limited in remainder after a general bequest to a person in being, with a power to use and even dispose of it; provided the whole will showed a clear intention to limit the interest of the first-taker to his life.

In Upwell v. Halsey, 1 P. W. 651, the testator directs " that such part of his estate as his wife should *leave of her subsistence* should return to his sister and the heirs of her body." The court observed, "as to what has been insisted on, that the wife had a power over the capital or principal sum; that is true, provided it had been necessary for her sub-

[Smith v. Bell.]

sistence, not otherwise; so that her marriage was not a gift in law of this trust money. Let the master see how much of this personal estate has been applied for the wife's subsistence; and for the residue of that which came to the defendant, the second husband's hands, let him account."

This decree is founded on the admission, that in a case in which the first taker might expend an uncertain part of the thing given, a remainder might be limited. The uncertainty of the sum which might remain, formed no objection. The cases are numerous in which the intent has controlled express words.

In the case of Cowper v. Earl Cowper, 2 P. W. 720, several questions were discussed, which arose on the will of Robert Booth; one of which was founded on a bequest of money to Mr Samuel Powell, to be laid out in lands, to be settled " in trust for and to the use of my son and daughter, William Cowper, Esquire, and Judith his wife, for the term of their lives, and after the decease of my daughter, then to the child or children," &c. It became a question of some importance whether the limitation over took effect on the death of the daughter, or on the death of the husband, who survived her. The master of the rolls was of opinion, that it took effect on the death of the wife, being of opinion that the express words giving the estate to both for their joint lives, though always adjudged to carry the estate to the survivor, were restrained to the wife by the subsequent words which give the remainder " after the decease of his daughter." " If the latter words be not so taken, they must," he says, " be totally rejected."

After reviewing the various decisions on the effect of such limitations, he adds, " so in our case, the words subsequent to the limitation, ' and after the decease of my daughter to the child or children,' &c., show the testator's intent, and must determine the effects of the limitation, especially in a will, where the intent overrules the legal import of the words; be they never so express and determinate."

In finding this intent every word is to have its effect. Every word is to be taken according to the natural and common import; but whatever may be the strict grammatical construction of the words, that is not to govern, if the intention of the tes-

[Smith v. Bell.]

tator unavoidably requires a different construction. 4 Ves. 329, 57, 311.

The court said in Sims v. Doughty, 5 Ves. 247, "and if two parts of the will are totally irreconcileable, I know of no rule but by taking the subsequent words as an indication of a subsequent intention."

Blackstone, in his Commentaries, Vol. II. 380, asserts the same principle. The approved doctrine, however, unquestionably is, that they should, if possible, be reconciled, and the intention be collected from the whole will.

In the case before the court, it is, we think, impossible to mistake the intent. The testator unquestionably intended to make a present provision for his wife, and a future provision for his son. This intention can be defeated only by expunging, or rendering totally inoperative, the last clause of the will. In doing so, we must disregard a long series of opinions, making the intention of the testator the polar star to guide us in the construction of wills, because we find words which indicate an intention to permit the first taker to use part of the estate bequeathed.

This suit is brought for slaves,—a species of property not consumed by the use, and in which a remainder may be limited after a life estate. They composed a part, and probably the most important part, of the personal estate given to the wife " to and for her own use and benefit, and disposal absolutely." But in this personal estate, according to the usual condition of persons in the situation of the testator, there were trifling and perishable articles, such as the stock on a farm, household furniture, and the crop of the year, which would be consumed in the use; and over which the exercise of absolute ownership was necessary to a full enjoyment. These may have been in the mind of the testator when he employed the strong words of the bequest to her. But be this as it may, we think the limitation to the son on the death of the wife restrains and limits the preceding words so as to confine the power of absolute disposition, which they purport to confer of the slaves, to such a disposition of them as may be made by a person having only a life estate in them. This opinion is to be certified to the circuit court.

[Smith v. Bell.]

This cause came on to be heard on the transcript of the record from the circuit court of the United States for the district of East Tennessee, and on the points and questions on which the judges of the said circuit court were opposed in opinion, and which were certified to this Court for its opinion, agreeably to the act of congress in such case made and provided, and was argued by counsel on the part of the plaintiff; on consideration whereof, this Court is of opinion, that Elizabeth Goodwin took only a life estate, by the will of Britain B. Goodwin, in the slaves belonging to the personal estate of the said Britain B. Goodwin, and that Jesse Goodwin had, by said will, a vested remainder in the said slaves that would come into possession on the death of the said Elizabeth. All of which is hereby ordered and adjudged to be certified to the said circuit court as the opinion of this Court.