Ranney, J.
Tbe petition in this case is filed to obtain a; construction of tbe last will and testament of Silas Pruden,. *252 late of Hocking county. It is filed by the executor against the widow and heirs, and contains a copy of the will, a state■ment of the condition of the estate, and of the claims respectively made by the defendants under the clauses of the will relating to them; and he asks that he may be directed by the court, “ in what manner to proceed and conduct himself in the execution of the trusts thereof.”
The will, after providing for the payment of the testator’s •debts and funeral expenses, out of his personal estate, and giving two small legacies to charitable uses, proceeds as follows:
“ 3d Item. I do give and devise to my beloved wife Mary (after payments named in above items 1st and 2d), in case she shall survive me, all and singular my moneys, credits, rights and ehoses in action, personal and real estate and property, for her benefit and swpport, and for her to have and hold •during the term of her natural life.”
“ 4th Item. I devise, that in case my said wife shall not survive me, the whole of my estate, real and personal, shall descend in the same manner as directed by law, in case this will had not been made. And in case my said wife shall survive’ me, I devise any and all of the estate and property, real and personal, above devised, that at my said wife’s decease shall ■remain, to my heirs and their legal heirs forever.”
“ 5th Item. I do hereby nominate and appoint Charles W. .James executor of this my last will and testament; and I hereby direct my said executor to proceed to sell, in his discretion, the forty acre tract of land owned by me, lying on Scott’s creek, in Falls township, in said county, and also to use his discretion, for the interest of my estate, in collecting the amount due me from my son Charles; and whenever my ■said wife shall desire it, I authorize my said executor, to sell the house and lot in Logan, in which I now reside; all the moneys realized from sale of my real or personal estate to be paid over to my said wife.”
Several extrinsic facts, appearing from the papers, are necessary to be noticed. The debt referred to in the will, as due .from the testator’s son Charles, and amounting to about twelve *253 hundred dollars, was secured by mortgage upon eighty acres - of land in Hocking county. This mortgage in the lifetime of the testator, and after the making of the will, was foreclosed, and he became the purchaser of the land at the sheriff’s sale; and, since his death, the tract has been sold by the executor, tinder the order of the probate court.
On behalf of the heirs, it is claimed, that the fund arising from this sale is not disposed of by the will, and is to be treated as intestate property. In the opinion of the court this claim can not be sustained. By the 54th section of the “ act relating to wills ” (2 S. & C. 1626), it is expressly declared that after-acquired property shall pass, “ if such shall clearly and manifestly appear by the will to have been the intention of the testator.” Eor the reasons given in Lessee of Smith v. Jones, 4 Ohio Rep. 121, a will should probably be construed with, somewhat more liberality here, upon a question of this charac- ■ ter, than has been customary in the English courts. It very seldom happens, that a man who goes to the trouble of making a will, intends to die intestate, as to any of the property that he may own at the time of his death. And when it clearly appears that the testator intends all the property he owns at. his death, to be used and applied for specified purposes, and the changes between the will and his death, have simply consisted in converting it from one description of property into-another, there can be no danger of interfering with his intentions, by holding it all subservient to the accomplishment of such purposes. Indeed, every line of this will looks to his death, and the situation of his property at that time, as the starting point in his dispositions. It is then that his debts are to be paid, and it is then that his wife is to take, either for life or otherwise, all the residue of his “ personal and real estate, and property” of every description; or, if she is not then living, that it is all to go to his heirs, as though the “ will had not been made.”
The next question arising upon this will, is one of much difficulty, and the court has bestowed upon it very careful attention. The amcunt of money in dispute is small; but it is; all that one of the parties, at least, has, and it is very impor *254 • taut to her that it should be secured to hex’, if it can be done ■ consistently with the rules of law, and the intention of her deceased husband. The extreme claims of the parties are these: the widow insists that she is entitled to have the entire estate, real and personal, converted into money, and, after the payment of debts and preferred legacies, paid over to her, to be •disposed of for her benefit and suppox-t during her life, as she . shall think necessary and proper; and that the heirs can take no interest in the property beyond what may remain undisposed of at her death. On the other hand, it is claimed for the heirs, that she takes only a life estate in the property, as • expressly declared in the will, and is only entitled to the annual income thereof; that the absolute estate in remainder is in them, and that no possession or control of the property • ought to be yielded to the widow, which does not fully secure -their interest, and the return of the entire property to them . at her death.
It may not be- difficult to see that neither of these positions, .in its whole extent and with all its consequences, can be supported ; and, yet, it is impossible to deny that strong reasons can be giv.en for the substance of either, when the face of the will alone is regarded. An argument is advanced for the heirs which, if well taken, would render it very conclusive that the claim of the widow could not be maintained. It is said • that any construction of the will which would- allow the widow to spend or consume the estate in her life time, would make the devise over to the heirs a nullity. It is very readily conceded, that no such use of doubtful words is admissible. When an iixstrument, of any kind, is open to two constructions, the one consistent and the other repugnant to law, or the one will give effect to the whole, and the other will destroy a part, the foxuner must always be adopted. It is our plain duty to give effect to the whole of this will, and, if it is necessary to ■effect this object, the right to restrain or modify the language of one part, to make it consistent with another, is unquestioned. The position taken in this argument, when stated in its most general form, may be admitted, and it certainly will ?be found sxxpported by a considerable number of adjudged *255 tases. Flanders v. Clark, 1 Ves., sen. 9; S. C. 3 Atk. 509 ; Attorney General v. Hall, Fitzgibbons R. 304; Butterfield v. Butterfield, 1 Ves., sen. 133; Ross v. Ross, 1 Jac. & Walk. 154; Paterson v. Ellis, 11 Wend. 259 ; Wilson v. Major, 11 Ves. 205. But what is the foundation upon which this doctrine, apparently inconsistent with the declared intention of the testator, is made to rest ? Undoubtedly, not so much upon any uncertainty as to what the legatee in remainder will ultimately get, as upon the fact, that the testator himself has given to the first taker interests in and powers over the property totally inconsistent with the éxistence of any remainder at all. An absolute and uncontrolled power of disposition, at the mere will, and for the sole purposes of the holder of property, is of the very essence of absolute ownership ; and when the testator has done this in favor of the first taker, there is much reason for saying, that he has relinquished all power to control or direct the further disposition of the property. Upon this ground, although not always prominently stated, we apprehend, these cases have all been decided.
But as the doctrine has the effect of making a principle of law interfere with the declared intention of the testator, the courts have been very careful to see, that it was not applied in any case when such total inconsistency between the present interest and the remainder, did not exist; and Mr. Jarman thinks that no case is to be found, where a bequest of what shall remain or be left at the decease of the prior legatee, has been held to be void, where the prior interest was expressly limited to the life of the first taker. 1 Jarm. on Wills, 322. And C.J. Marshall, in Smith v. Bell, 6 Pet. 81, says: “ It would be difficult, we think, to support the proposition, that a personal thing, not consumed by the use, could not be limited in remainder after a general bequest to a person in being, with a power to use and even dispose of it; provided the whole will showed a clear intention to limit the interest of the first taker to his life.” There is, however, another class of cases, which, we think, more nearly concern the present, and in which no contrariety of opinion is found to exist. The clear result of these cases is thus stated by Mr. *256 Jarman: “ And if the gift of what shall be left is preceded by a power of disposition or appropriation reserved to the prior legatee in favor of particular objects, the expression evidently points at that portion of the property which shall be unappointed or unappropriated under the power.” The case of Surnam v. Surnam, 5 Madd. 123, is a very pertinent illustration of this class. The testator bequeathed his personal estate to his wife for life or widowhood, with a power to apply it to her own benefit and the maintenance of A. and B. during minority; and at her decease or second marriage, he gave the same, or so much as should then remain, to certain other persons, and this was held to be a good bequest of the property unapplied to the prescribed purposes.
It is thus made very evident, that the widow may have her support charged upon this property, if such was the intention of her husband, without in the least infringing upon the principle of law relied upon, or interfering with the bequest made to the heirs, if that bequest, by the will, is limited to the balance of the property remaining at her death, unappropriated-to this purpose. And we now proceed to inquire whether the will is open to this construction. This must depend upon the intention of the testator, and we are bound to gather his intention from what he has said in the will. As said by this court in Woman’s Lessee v. Teagarden, 2 Ohio St. Rep. 382, to allow the natural import of his language “ to be varied or contradicted, or omissions supplied, or apparent ambiguities to be removed, by parol evidence, would be to repeal the law requiring it to be in writing, and to introduce all the uncertainty, fraud, and perjury, the statute was designed to prevent.” But language, at best and when used with propriety,, is a very imperfect vehicle of thought, and we seldom appreciate correctly its nicer shades of meaning, without an accurate knowledge of the persons and things to which it is applied. It is in view of this fact, that the law not only allows but requires the instrument to be read in the light of the surrounding circumstances, and permits the introduction of such extrinsic evidence as will enable the court to place itself in his situation, to see things as he saw them, and to apply his language- *257 as he understood and intended it. Or, as better expressed by Ch.J. Marshall, in Smith v. Bell: “ In the construction of ambiguous expressions, the situation of the parties may very properly be taken into view. The ties which connect the testator with his legatees, the affection subsisting between them, the motives which may reasonably- be supposed to operate with him, and to influence him in the disposition of his property, are all entitled to consideration in expounding doubtful words, and ascertaining the meaning in which the testator used them.”
From the pleadings in this case it appears, that this widow was, at the death of the testator, an aged and infirm woman, and wholly destitute of any other means for her support than that claimed under this will. That the heirs of the testator, referred to in the will, consist of his children by former wives, and the descendants of several of them who are deceased ; and that the whole value of the property, after paying the debts and preferred legacies, does not exceed two thousand or twenty-five hundred dollars.
Does the language of the will, read in the light of these surrounding circumstances, authorize us to declare the support of the widow to be a legitimate charge upon the whole of this property ? We are of the opinion that it does; and that a construction which should give her the whole absolutely, or should confine her, whatever might be her necessities, to the mere annual income, would equally defeat the intentions of' the testator. It is certainly true, that most of the language used in the third clause of the will, is such as would properly and pertinently define a life estate; but even in that clause, an expression is used which would be wholly useless, if the purposes of the testator were confined to that object. He declares the bequest to her of all his real and personal estate, to be “ for her benefit and support;” and then adds — “ and for her to have and hold during the term of her natural life.” We are not authorized to strike these words, “ benefit and support,” from the will; they must be presumed to have been used for a purpose, and to have had a meaning in the mind of the testator. They can have had but one of two objects— *258 either to furnish a motive for giving her a life estate, or to express the purpose for which, during her life, she was to hold and apply, so far as might be necessary for her support, all his property. In the first case the words are legally useless, and are, in effect, stricken out by construction; in the other, they furnish the governing purpose of all his dispositions in her favor. Let her interest in the property be a life estate merely, or the larger interest of a charge upon it commensurate with her wants for support, a holding for her life, would be equally indispensable to answer either purpose. But whatever of ambiguity there may be in this clause, is pretty effectually removed by the next. In that, he first provides for the event of his wife’s death before his own, and simply declares that the whole of his estate, real and personal, shall descend as though the will had not been made; but in the event that she survives him, he devises all his estate, “ that at my said wife’s decease shall remain,” to the same persons and their heirs forever. Now, by the terms of the will, all his estate was to be converted into money — all but the homestead absolutely, and that, upon the request of his wife. There was no property that was necessarily or probably to be consumed in the use. It is certain that he did not expect his heirs to get all, at the death of the wife, which might come to her hands while living ; as they would do, if she was confined to the income. 'They were to have only what remained when she was done with it; and when this expression is taken in connection with •the third clause of the will, the inference is almost irresistible, that the testator supposed the fund might, and probably would, be diminished by the necessities arising for his wife’s support 'The fifth clause of the will points very strongly to the same ■•conclusion. In that, the executor is positively directed to pay ■over to her, all moneys realized from the sale of his real or personal estate. It is very true, that this does not necessarily import that she is to take or hold this money as her own absolute property, but it does imply a large confidence in her, and a very much larger control over and interest in the fund, ■than would ordinarily be found in the creation of a lifo estate. *259 If, however, a doubt should still remain, upon the construction of this language alone, it ought, I think, to be dispelled, upon a fair consideration of the circumstances existing at the time the will was made. The testator must have known the extent of his property, and the situation arid necessities of the objects of his bounty. He had an aged and infirm wife, without property of her own, and children who had probably come to adult years, and whose interest in his wife, could not have been so strong as though she had been their own mother. With an equal affection for both, it was his legal duty to support his wife while he lived, and a high moral duty to provide for her support from his property, after his death. It is plain that he undertook to discharge this duty. But if he gave her only a life estate in his property, he certainly failed to accomplish the object. It is impossible that he should have supposed, that his wife could continue to occupy the homestead, and live upon the mere income derived from the balance of his property; or, when that was added to the fund, that the income of the whole, under circumstances of sickness and misfortune likely to ensue, would furnish her any adequate support. When, therefore, he declares his purpose to be, to provide for such support, we must suppose that he intended the use of the means indispensably necessary to the attainment of this end. Eor these reasons, and upon these considerations, we are led to the conclusion, that the will does charge upon the entire property the support of the widow, and that she is entitled to use either principal or interest, or both, so far as may be necessary for this purpose ; and that the heirs have a valid estate in remainder to what may be left when this object has been accomplished. A decree will be entered placing this construction upon the will, and the cause will be remanded to the district court for the entry of a final decree therein. Eor the guidance of that court, it is only necessary to say, that both the widow and heirs having valid interests in this property, we see no reason to doubt that the well-settled rules of equity, in regard to the custody, management and security of trust funds, are equally applicable to this case
*260 Peck, C.J., and Brinkerhoee, Scott and Wilder, JJ., concurred.