EXECUTORS OF A. E. JUDEVINE *v.* MALVINA M. JUDEVINE ET AL.

*Will. Construction. Costs.*

1. The devise of an absolute gift will not be defeated by a subsequent repugnant clause, unless it is the manifest intention of the testator that such subsequent clause serve as a limitation upon the gift absolute.

2. *Held*, that the language in this case created an absolute gift.

3. The executors were directed to hold one-fourth part of the estate as a fund for the education of poor and deserving young men, "and at any time after five years from my decease, should my executors in their discretion think best, whatever may remain of said one-fourth part of my estate they have the right to appropriate" to certain towns. *Held*, that the income of said one-fourth part should be expended, and not allowed to accumulate.

4. The first codicil directed that the timber lands of the intestate should be held until after his other real estate was disposed of. *Held*, all parties agreeing, and such a course appearing injudicious, that this expression might be construed as directory, and not conclusive upon the executors.

5. At the suggestion of orators, it is ordered that the taxable costs and reasonable counsel fees be paid out of the estate.

Bill in chancery for the construction of the fifth and seventh paragraphs of, and the first codicil to, the will of A. E. Judevine by his executors against Malvina E. Judevine, the University of Vermont and State Agricultural College, and the town of Concord. Heard on bill and answers at the December Term, 1888. Tyler, Chancellor, dismissed the bill *pro forma*. Appeal by the orators.

The fifth, sixth and seventh paragraphs and the first codicil were as follows :

"Article 5. I grant and devise to my beloved wife, Malvina M. Judevine, one-half of the residue of my estate, both real and personal, and it is my will that the proceeds of any policy of insurance on my life which my wife may receive shall be computed as part of the share given her by this will and subject to the conditions specified in article number eight of this will, relating

to my home premises. The foregoing grant and devise to my wife is for her sole use, control and enjoyment during her life, trusting and expecting that she will use and dispose of the whole thereof as she may desire, and that she will give the residue, if any remains at her death, by her will to such persons and for such purposes as she may desire. But inasmuch as I desire that such residue at her decease shall in no event pass to her legal heirs if undisposed of by her, I give, grant and devise, one-half of the same to the University of Vermont and State Agricultural College in the same manner as named in article number six of this will, and the other half to be held and expended by said executors for the purpose named in article number seven in this will, meaning what is unappropriated by my wife before her decease.

"Article 6. To perpetuate the memory of my late beloved son, Cornelius Alden Judevine, who died without receiving that liberal education which I intended he should have, I desire to create a fund to be known as the " Cornelius A. Judevine memorial fund," for the purpose of aiding poor and deserving young men in Vermont in obtaining the advantages of a liberal education. To this end, I give, grant and devise one-half of the remaining half of the residue of my estate, both real and personal, meaning one-half of the residue left after discharging the gifts specified in articles one, two, three, four and five, and subject to the conditions respecting my home place, named in article eight of this will, to the University of Vermont and State Agricultural College, located in Burlington, Vermont, upon the trusts and in the manner following: I direct my executors, as soon as it can be done to the best advantage, to convert said real and personal estate into money or safe monied securities and pay over one-half of my estate, after articles number one, two, three, four and five have been complied with, to the University of Vermont and State Agricultural College, and that the trustees of said institution shall apply the income thereof, and such part of the principal as shall become necessary, to be expended from time to time in paying the expenses, in whole, or in part, of deserving

young men who are poor, pursuing their studies in the academi-
cal department of said institution, or in loaning to such young-
men such sums, and in such manner and on such security as said
trustees may determine. The bequest or legacy I here make
not to be expended in the education of young men who them-
selves or parents are pecuniarily able to pay for their education,
unless on a loan well secured to be refunded to said trus-
tees, and held as a fund as far as practical, for the education
of poor your men, as this bequest is intended. Herein giving
preference to applicants residing in the towns of Hardwick in
Caledonia county and Concord in Essex county, Vermont, and
after these to applicants residing in any town in Vermont. No
discrimination to be made against applicants on the ground of
sect, religion or society. Though intemperate young men are to
be excluded from the benefit of this my bequest. All loans
when paid shall be held by the trustees for the same purpose.
It is my desire said trustees establish proper regulations and con-
ditions for the expenditure of the fund hereby created, and for
the investment of so much thereof as may at any time be unused
or unexpended, so that the fund may be preserved and increased
so far as practicable, and that said trustees, each and every year
as long as said fund exists, shall give public notice in at least
three weekly newspapers printed in the State of Vermont, one
of which shall be in Caledonia county and one in Essex county,
at least three weeks each year, stating the existence of the fund
and briefly stating to what class of young men the fund is made
available by the terms of this will. Same to be paid to said
university and college in sums not to exceed one thousand dol-
lars each for the first five years. The trustees of said institution
are to report semi-annually to each of my executors the amount
of the funds expended, and to whom, and should the said trustees
fail at any time to carry out the provisions of this will on the
part of said university and college, in all particulars, my said
executors are directed to withdraw the payment of further funds
to said Vermont University and Agricultural College, and said
executors are directed to (invest ?) the remainder of said funds in

some other institution of learning in Vermont that my executors in their discretion shall select, under the same provisions and restrictions the grant or bequest is made by the will to the Vermont University and Agricultural College.

"Article 7. It is my will that my executors shall hold the other fourth part of my estate, both real and personal, not heretofore appropriated, as a fund to be known as the Cornelius A. Judevine fund, for the education of poor deserving young men in the same manner and with the same restrictions as prescribed in article sixth, that the Vermont University and State Agricultural College are to perform as named in said article sixth, and at any time after five years from my decease, should my executors in their discretion judge best, whatever may remain of the one-fourth part of my estate they have the right to appropriate one-half of said fourth part remaining unexpended to my native town Concord, in Essex county, Vermont, and the other half to the town of Hardwick, in Caledonia county, both bequests to be known as the "Cornelius A. Judevine Memorial Fund," the interest of which to be used in each of said towns for school purposes in the education of all classes in the several school districts in each town without discrimination, although in the latter town some parents are not deserving any assistance from me to educate their children or aiding them in paying their school district taxes."

"1st Codicil.—I, Alden A. Judevine, make the following additions and explanations of my wishes in addition to my last will and testament, dated Nov. 16th, 1883, to which this is attached. It is my wish and will that my real estate in particular shall not be sacrificed by an immediate sale and' that my timbered lands in Hardwick shall be held by my executors until my said other real estate in Hardwick is disposed of, and to carry out my wishes and ideas would suggest that my executors shall advertise my whole real estate in Hardwick and Woodbury, for sale, in view that some capitalist would purchase the whole for the sake of operating the timbered lands, and would further suggest an additional executor to be appointed, who resides in Hardwick, to particu-

larly have charge of my real estate and, with the advice of the other executors named, to dispose of all my real estate, and would suggest as such additional executor either Loren C. Foss or L. H. Warren (as my other executors may think advisable) for one of them with the other executors named in my will to see to said real estate and personal property and also to see that each provision of my will is carried out, and that the Probate Court, at the decease of the executors named, continue to appoint an executor and sufficient funds retained to pay for his services and expenses, to see that the Burlington University and Agricultural College and the towns, viz.: Hardwick and Concord, shall use the funds as specified here and in my said will and bonds duly executed and filed in the Probate Court in Caledonia county for the faithful performance of each.

" Each of said towns to receive what is paid each town as a memorial fund in the name of my deceased son, Cornelius Alden Judevine, the interest of which at six per cent annually, to be expended for school purposes as named in said will. The sum paid to each town may be used to pay the indebtedness of each town, and should either town, or both, neglect to carry out the provisions set forth by me, the funds delivered and paid to such town by my executors, to be collected from said town and placed in some other town or towns that will receive it and carry out my desires, wishes and will as set forth by me.

" If anything in this conflicts with my will dated November 16th, 1883, it is my will that this explanation of my wishes and will shall take precedence to that will wherein it conflicts."

*Wilson & Powers,* for Malvina M. Judevine.

The first period of article fifth is an absolute gift in fee. 1 Jar. Wills, 480 and cases cited; *Campbell* v. *Beaumont,* 91 N. Y. 464; *Damrell* v. *Hartt,* 137 Mass. 218; *Parker* v. *Iasigi,* 138 Mass. 416.

The second is a gift with an absolute power of disposal, which amounts to a gift in fee. 1 Roper Leg. 642 and cases cited; *Hughes* v. *Ellis,* 20 Beav. 193; *Perry* v. *Merritt,* 18 Eq. Cas.

Executors of Judevine *v.* Judevine et al.

152 ; *McDonald and wife* v. *Walgrove et al.*, 1 Sanf. Chan. 274 ; *Jackson et al.* v. *Coleman*, 2 John. 494 ; *Jackson et al.* v. *Robbins*, 16 John. 537 ; *Van Horne* v. *Campbell*, 100 N. Y. 287 ; *Kendall* v. *Kendall*, 36 N. J. Eq. 91 ; *McClellan* v. *Larchar*, 16 Atl. Rep. 6, 269 ; *Ide* v. *Ide*, 5 Mass. 500 ; *Davis* v. *Mailey*, 134 Mass. 588 ; *Burbank* v. *Whitney*, 24 Pick. 146 ; *Bacon* v. *Woodward et al.*, 78 Mass. 376 ; *State* v. *Smith*, 52 Conn. 557 ; *Stowell* v. *Hastings*, 59 Vt. 494 ; *Chaplin* v. *Doty*, 60 Vt. 712.

The above cases clearly show that this being so, the remain· der is bad for repugnancy. The general intention as gathered from the whole will is to the same purport, and this should govern. Ch. J. Marshall, in *Finley et al.* v. *King's Lessee*, 3· Peters, 377 : 1 Redf. Wills, 435-6 ; 2 Kent's Com. 633, n. 4 ; *Doe* v. *Stenlake*, 12 East. 514 ; *Doe* v. *Thomas et al.*, 3 A. & E. 123 ; 24 Ga. 102 ; 8 Rich. Eq. 241 ; 13 Barb. 106 ; 30 Barb. 312 ; 30 Eng. C. L. 77.

The words used in the first codicil are advisory merely and do· not impose any restraint upon the executors. 1 Per. Tr. 121 ; *Morice* v. *Bishop of Durham*, 10 Ves. Jr. 536.

*Harry Blodgett*, for the town of Concord.

The whole of the fifth article should be read together. So considered it plainly means that the wife shall have the use of this. portion of the estate as long as she lives and nothing more. To give any other signification to it renders utterly meaningless the words. in the last period. *Richardson* v. *Paige*, 54 Vt. 373 ; Ch. J. Marshall, in *Smith* v. *Bell*, 6 Peters, 68 ; *Brant* v. *Virginia Coal and Iron Co. et al.*, 93 U. S. 326 ; *Bradley* v. *Westcott*, 13 Ves. 445 ; *Boyd* v. *Strahan*, 36 Ill. 355 ; *Burleigh* v. *Clough*, 52 N. H. 267 ; *Dunning* v. *Vandusen*, 47 Ind. 423 ; *Shepard's Heirs* v. *Shepard's Estate*, 60 Vt. 116 ; *Stowell* v. *Hastings*, 59 Vt. 497 ; *McCloskey* v. *Gleason*, 56 Vt. 264 ; *Hibbard* v. *Hurlburt*, 10 Vt. 178 ; *Brightman* v. *Brightman*, 108 Mass. 238 ; *Williamson et al.* v. *Daniels et al.*, 12 Wheat. 568 ; *Randall* v. *Josselyn*, 59 Vt. 557 ; 2 Jar. Wills, 46 ; *Shaw* v. *Huzzey*, 41 Me. 495 ; *Rumsdell* v. *Rumsdell*, 21 Me. 288.

It is the intention of article seventh that the portion named should be allowed to accumulate, and paid over with the accumulations to the town of Concord.  *Baptist Convention* v. *Ladd*, 58 Vt. 95.

*Wales & Wales*, for the defendant college.

Taking the whole of article fifth together the wife is given the use of one-half of this estate for life.  A devise for life only creates merely a life estate.  4 Kent, 319 ; *Burleigh* v. *Clough*, 52 N. H. 267 ; *Stuart* v. *Walker*, 72 Me. 145 ; *Hall* v. *Otis*, 71 Me. 326 ; *Jackson* v. *Robbins*, 16 John. 588 ; *Lineau* v. *Summerfield*, (N. J.) 3 Central Rep. 505 ; *R. I. Hosp. Trust Co.* v. *Com'l. Nat. Bank (R. I.)* 1 N. E. Rep. 20 ; *Stowell* v. *Hastings*, 59 Vt. 499 ; Sch. Wills, s. 558.

The opinion of the court was delivered by

VEAZEY, J.  Treating the fifth article of the will, for convenience of reference, as divided into three parts, the first ending with the first punctuation period, the second with the next period, and the third with the last, it is quite plain and not disputed that the first part standing alone would carry a fee.  In the second part, there is . clearly granted an unlimited absolute power of disposal.  That is not disputed ; but it is claimed in behalf of the college and town that this part indicates an intention to limit the title in Mrs. Judevine to a life estate, and that this import is strengthened by the third part.  The contention on the part of Mrs. Judevine is that as the first part makes the grant a fee, the third part must be rejected as repugnant.  It is claimed for the college and town that the intention of the testator fairly deducible from the language of the article as a whole was to gives a life estate only to the wife with power of disposal at her pleasure.  Taking the several parts up in their order, the first one concededly imports a devise of an estate in fee, without a word indicating a different intention.  The second part begins by saying the foregoing grant and devise to his wife is for her sole use, control and enjoyment during her life.  This points to

(38)

a life estate; but it is followed by the expression: "Trusting and expecting that she will use and dispose of the whole thereof as she may desire, and that she will give the residue, if any remains at her death, by her will, to such persons and for such purposes as she may desire." Therefore the second part as a whole seems to us to negate an intention to limit the grant to a life estate. The portion quoted makes it clear that the intention was to give an absolute power of disposal, not of a life estate, but "of the whole thereof" either by deed or will. To deduce an intention of limitation upon a previous grant in terms constituting a fee from a clause providing for an absolute and unrestricted power of disposition, would indeed be a violent and unreasonable inference. The clause "during her life" is to be interpreted in the light of the following clauses, which unmistakably point to unrestricted power of disposition of the fee.

Therefore until we come to the third part we find no indication of an intention to limit the grant to a life estate. But it is upon this part that counsel mainly rely to show an intention to thus limit the grant.

It is plain that the central idea in the mind of the testator in drawing the third part of this article was, not to make a provision for the town of Concord and the college, but to guard against any of the property granted to his wife from passing to her heirs unless she should give it to them. They had no living children. He provided for the town and college elsewhere in the will. Herein is a distinction between this will and the wills in *Smith* v. *Bell*, 6 Peters, 68, and other cases cited.

The language of the granting clause in *Smith* v. *Bell*, as in the case at bar, was adequate to carry a fee, but that was followed by a provision for a remainder, which was interpreted by the court to manifest the intention of the testator to make a future provision for his son. Therefore the court in order to carry out such intention and give effect to all parts of the will, regarded the remainder clause as indicating an intention in the granting clause to limit the grant to a life estate.

In the opinion of Redfield, J., in *Richardson* v. *Paige,* 54 Vt. 373, the learned judge, after quoting this rule: "The exclusion of the devise over depends upon whether the first taker has the absolute right to dispose of the property," says that Ch. J. Marshall disregarded it to construe the will according to the intention. We think a careful reading of the opinion of the Chief Justice does not warrant such conclusion, but that he put the decision upon the ground above stated. That has been regarded as an extreme case and has provoked some adverse comment, but it has been cited with approval by this court, and so far as it involves legal rules of construction it seems to be within the general line of authority, especially as adopted in this State and lately expressed in *Chaplin* v. *Doty,* 60 Vt. 712, viz: "It is an elementary rule of construction that an absolute gift in a will will not be defeated by a subsequent repugnant clause. If the subsequent clause is plainly a qualification or condition, which was evidently intended by the testator to be read as part of the preceding clause, the rule is different. It makes little difference in the construction whether the granting clause itself is in form conditional; or the condition is annexed to a clause in form absolute." And again in *Stowell* v. *Hastings,* 59 Vt. 494, viz: "In determining what estate is given the first taker, the whole will should be considered, and all the clauses construed together. Even in those cases where an absolute estate is in terms given, if subsequent passages unequivocally show that the testator meant the legatee to take a life interest only, the prior gift is restricted accordingly. Jarman on Wills, chap. 15. Such are the other cases in this State—*Richardson* v. *Paige,* 54 Vt. 373; *McCloskey* v. *Gleason,* 56 Vt. 264."

If the remainder clause, the third part of the fifth article, not being for the purpose of a gift to the town and college, but, as before stated, to keep an assumed remainder undisposed of by deed or will by Mrs. Judevine from going to her heirs, she having no children, shows that in the opinion of the testator the previous words had given only an estate for life, then upon the authority of *Smith* v. *Bell,* *supra,* we may hold that the

grant was only of a life estate. But this remainder clause being only for the purpose just stated, we do not think it indicates am understanding of the testator that he had not already made a grant in fee to his wife. In this respect this case differs from that of *Smith* v. *Bell, supra*, and others of that class ; and it differs also from *Richardson* v. *Paige, supra*, in this : that there the bequest to Paige was in express terms made subject to the provision for the contingent benefit of his wife. Neither does it fall into the category of those cases, several of which are cited in the briefs, where the testator gives to the first taker an estate for life only, by certain and express words, and annexes to it a power of disposal, in which case the devisee for life will not take an estate in fee, notwithstanding the distinct and naked gift of a power of disposition of the reversion. That is, an absolute and unqualified power of disposal annexed to an express life estate does not enlarge the *quantum* of the estate. See *Jackson* v. *Robbins*, 16 John. 588, and cases there cited. We think it was the intention of the testator to make a grant and devise to his wife of an estate in fee, and that the case falls directly within the decision in *Stowell* v. *Hastings, supra*, where the will, after disposing of a part of the estate, gave to the testator's wife the residue, " for her benefit and support, to use and dispose of as she may think proper," and then provided that if any of the estate should be left in her possession at her death it should be equally divided between the brothers and sisters of the testator and it was held that the wife took an absolute estate, and that the remainder over was void for repugnancy. The proposition of law upon which the court rested the decision, as enunciated by Taft, J., in the opinion, was this : " If an estate is given to a person generally or indefinitely with an absolute power of disposition, it carries a fee and a remainder over is void for repugnancy ;" and he then cites numerous authorities in support.

Under the seventh article we consider that the executors are to hold and appropriate the portion of the estate therein specified, for five years, for the purposes and under the same restric-

Executors of Judevine v. Judevine et al.

tions and in the same manner in all respects, as prescribed and provided in the sixth article of the will as to the portion of the estate therein granted and devised to the University of Vermont and State Agricultural College. We think the clause "What-ever may remain," etc., plainly indicates that this fund is not to be kept for accumulation during the five years, but is to be used as above stated.

All parties agree that the provision of the first codicil as to sale of timbered lands does not operate as a restraint of the sale thereof until all the other real estate in Hardwick is disposed of, but was intended to be only advisory, and that the executors may in their discretion effect a sale notwithstanding such other real estate is undisposed of. A majority of the court are inclined to adopt this view, all parties agreeing thereto, and being satis-fied that it would be carrying out the real intention of the testator, that is, an administration of the estate in a way that would pro-mote its best interests and that of all parties interested therein, and that the beneficial purposes of the testator would thereby be better attained.

We also concur in the suggestion of the orators in the bill that the taxable costs of all parties, with reasonable counsel fees, should be paid out of the funds of the estate before distribution, the same to be fixed and allowed by the Court of Chancery.

*The pro forma decree dismissing the bill is reversed, and the cause remanded to be disposed of pursuant to the man-date filed.*