Mr, Justice Cox,
after making the foregoing statement of the case, delivered the opinion of court.
We will first examine the effect and operation .of Lewis *273 Carusi’s will, as if it were the only paper executed by Lewis' Carusi. It contains two important provisions. First. It gives and devises all his estate to his brother Samuel Carusi, to. be held, used and enjoyed by him, his heirs, executors, administrators and assigns, forever. Secondly. At his death, it gives said'estate, or so much thereof as Samuel shall not have disposed1 of by devise or sale, to his nieces, including the complainant.
The first provision standing alone gives a clear fee simple éstate including unqualified powers of sale and devise. The second, which might otherwise be held to qualify the first, distinctly recognizes the power to- sell and devise in Samuel. Now Samuel, by his will of March, 1877, devised all this property to his wife for life, with remainder to all his children. There was, therefore, nothing left for this complainant to take under the strict terms of Lewis’ will, which only .gave to her and her sisters what should not have been ■devised or sold by Samuel in his lifetime. But it is maintained by the complainant that the fact of' the gift over to her and her sisters, after the death of Samuel, of itself, ■qualifies the estate first given to Samuel, and takes away from him the power of devising; that the gift over, in terms; of what has not been devised is fatal to the power of •deVise.' If this construction can be maintained, it must' be by reforming the will and striking out' from it the power to Samuel to 'devise; which is explicitly recognized. Can a ■court do this?
There are two classes of cases referred to in this connection. In the first, while the common law doctrine is recognized, that an estate may be given to one in fee simple, and yet, on a contingency, may be given oyer to another, by way of executory deviáe, which gift over is held to qualify and restrain the first taker’s control over the estate, yet it is further'held, that, where the first taker is, in terms, vested with “the power of absolute disposition, the devise over is inconsistent with this, just as any restraint upon alienation is inconsistent with a conveyance, *by deed, of a fee simple, and is void. See 4 Kent, 271; Jackson vs. Bull, 10th John *274 son, 19; Jackson vs. Livingston, 15 Johnson, 169; Ide vs. Ide, 5. Mass., 504; Burbank vs. Whitney, 24 Pick., 154; Ramsdale vs. Ramsdale, 21 Maine, 293; McRee’s Ad. vs. Means, 34 Alabama, 372; Cook vs. Walker, 15 Georgia, 462; Fearne, sec. 667. According to these authorities, the devise over, under which the complainant claims would have to be considered void as inconsistent with the devise to Samuel.
Another class of cases consists of those which hold that the devise over cuts down and restricts a general gift to the first taker to a life estate, and which endeavors to reconcile such devise over with the power of disposition given to the first taker, by limiting the latter to his life interest. This is a matter of construction. These authorities do not undertake to strike out the power of disposition from the will, but construe it as confined to the life estate of the first taker, in order to harmonize his rights with those of the remainder man. See Smith vs. Bell, 6 Peters, 68; Lardner vs. Bridges, 17 Pick., 339; Terry vs. Wiggins, 47 N. Y., 516; Dean vs. Dumally, 36 Miss., and other cases. It is obvious, however, that if the first taker has the power to devise the fee simple after his death, the rights of the remainder man after his death would be wholly inconsistent with such power of devise. The two cannot be reconciled by any effort of construction. And this was recognized by the Court of Appeals of New York, in the case of Terry vs. Wiggins, 47 N. Y., 516. In such case, therefore, the title of the second devisee could not be maintained without rejecting from the will the power of devise conferred by it upon the first taker, which *no court can do. In this case, the devise over by Samuel Carusi, being only of such property as Lewis may not have -disposed of, by clear implication gives to Lewis the power to dispose of the property absolutely, i. e., in fee simple. It seems to us,-therefore, that, in this case, the devise over to the complainant and' her sisters is inconsistent with the estate conferred in the first instance on Samuel Carusi, and would, therefore, be void.
But admitting the interpretation and effect claimed for *275 the will by thé complainant, let us see what effect is produced' by the deed in trust made subsequently.'
This trust is to manage the property for the use and benefit of Lewis, the grantor, during his life, and upon his death to convey to such person or persons .as Lewis may, by his last will and testament, or other paper writing under his hand and seal, by two persons witnessed, designate and direct. It is not “to such persons as he has designated,” referring to a certain designation in the past, nor to such persons “as he may have designated,” referring to a possible designation in the past, but to such as he “ may designate,” which is a clear and unmistakable reference to the future. In point of fact, he never thereafter executed any will designating and directing to what beneficiaries the property should go, and no such designation took place by any new act, unless by the absolute deed of October, 1872, which, if valid, would be fatal to the claims of the complainant. If the will of March, 1872, be admitted to be in due form so as to answer the purposes of a direction and designation under this trust, and it had never been revoked, it could be appealed to as establishing the rights of the complainant.. A will only operates at the time of the testator’s death. It is, therefore, whenever executed, in its effect, future, as to any act done by him in his life. As Lord Mansfield expresses it, in the case of Spring vs. Biles, 1st Term Reports, 435, note, such a reference means any will that shall be in force at the death of the testator.” A will, therefore, which- is to go into effect- after the date of an instrument like this, although executed before, fully gratifies the language referring- to persons whom the speaker may by his last will and' testament ■designate.
- But this will was revoked by operation of law. It is a well-settled rule of law that when a testator, after executing his will, chánges the legal seisin and conveys away the fee simple, the will is thereby revoked, upon the implication of law that the testator has changed his intention. See 4 Kent, 528; Bosely vs. Bosely’s Executors, 14 Howard, 390. And if this were not the rule, and iff the instrument I am *276 uow considering were another will, instead of a .deed, still the first will would be considered revoked, because the second^ .disposition is entirely inconsistent with it. -.The first purports to give absolutely to Samuel, and after his death to> his daughters. The second gives neither him nor them, anything, but gives the estate to him in trust for such persons as the testator may designate in future.
It, therefore, follows that there was never any valid instrument in existence, after the execution of the deed in trust, which could be called a designation and direction in regard to the beneficiaries under that trust, unless it be the absolute deed, which will not avail' the complainant. To avoid this conclusion, it is sought to establish a connection between the will and the deed in trust. If the deed had given the estate “ upon such .trusts as I have by my last will declared,” the deed would, by reference to the will, have made those trusts a part of the conveyance, and would have established them irrevocably. The grantor could no more change them afterwards than he could recall the title. But it is obvious, that he did not mean to convey absolutelyupon the trusts of that will, because he clearly reserves to himself a power to designate the objects of his bounty in future by either will or other paper. The only construction left for the complainant to rely upon is to treat the deed in trust as if it conveyed for the benefit of such persons as the grantor. had already designated by his will, or might thereafter designate by will or other paper. To do this is to add language to the deed. It is not impossible that Lewis, the grantor, may have supposed that his will was unaffected by his deed iu trust and would take effect, unless subsequently revoked, and that he may have had this in mind when executing this deed in trust. But, in the first place, this is mere conjecture. There is no evidence of that fact, even if such evidence were admissible, to control the interpretation of this deed. In the next place, such evidence would not justify the court ini altering the terms of the deed.. ....... ■ •
• We are now concerned with the interpretation of a regular conveyance, under seal, and not a will; and certainly no *277 parol evidence could be admitted of vague expressions uttered from time to time, in order to interpolate new terms into such a conveyance. In the next place, the will cannot be relied upon as a designation or appointment such as this trust contemplates, because it is inconsistent with the trust. The trust is that Samuel shall convey to somebody to be designated by Lewis, and that too upon the death of Lewis. The will does not direct Samuel to convey upon his brother’s death to any one, but simply gives the estate to him.
On these grounds, it does not seem to us possible to construe this deed in trust as if it read that the beneficiaries should be those who are named in the past will, or those who might be designated thereafter, but the deed in trust has reference to a future act of the grantor, and no such act ever took place, unless it was consummated by the absolute deed of October, 1872. The will, then, is entirely out of the case. The deed in trust left the title in Lewis for the benefit of heirs general in case of Samuel’s failure to appoint any special objects of his bounty. In that view the complainant would not be entitled to the relief she seeks, if there were no subsequent conveyance. It becomes, therefore, unnecessary to inquire into the validity of the subsequent conveyance of October, 1872, because, whether that be valid or not, the complainant fails to establish any title to relief.
The decree below is affirmed.
The Chief Justice dissented.